In re Edwin G. SCHMIT, Debtor.

Rita FOX, Plaintiff,

v.

Edwin G. SCHMIT, Defendant.

Bankruptcy No. 4–85–2647.
Adv. No. 4–86–48.

United States Bankruptcy Court,
D. Minnesota.

March 19, 1987.

Tim D. Wermager, Hastings, Minn., for plaintiff.

Richard J. Pearson, New Brighton, Minn., for defendant.

## ORDER DENYING DEBTOR'S DISCHARGE

ROBERT J. KRESSEL, Chief Judge.

This proceeding came on for trial on December 5, 1986. Tim D. Wermager appeared for the plaintiff, and Richard J. Pearson appeared for the defendant. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and (J). Based on the evidence, arguments of counsel, and the file of this proceeding, I make the following:

## MEMORANDUM ORDER

### I.

The defendant, Edwin G. Schmit, is 56 years old. He was employed as a bus driver for the Metropolitan Transit Commission when he filed his bankruptcy petition on December 11, 1985. The plaintiff, Rita Fox, is a creditor of Schmit.

Schmit and Fox have known each other for approximately 10 years, and at one time their relationship was serious enough to involve considering marriage. From July 1977 through May 1983, Fox loaned Schmit money on several occasions: [1]

(1) On July 1, 1977, Fox loaned Schmit $2,000.00 to purchase a 1939 Chevrolet. Schmit promised to make monthly installment payments to Fox of $50.00, but no loan documents were ever executed.

(2) On September 20, 1981, Fox loaned Schmit $150.00 and $50.00 to buy antique auto parts.

(3) On October 7, 1981, Fox loaned Schmit $260.00 to purchase new cabinets for his motorhome.

(4) On July 24, 1982, Fox loaned Schmit $240.00 to buy a desk.

(5) On April 6, 1983, Fox loaned Schmit $10,400.00 to pay an outstanding loan on his motor home. Schmit needed to pay off the motor home loan in order to secure financing for a new home in Ham Lake, Minnesota.

(6) Schmit closed on the new home on May 6, 1983. At that time, Fox loaned him an additional $12,200.00 as a down payment on the Ham Lake property. Schmit promised to repay the $10,400.00 and the $12,200.00 loans from the proceeds of the sale of his old house in Minneapolis, Minnesota.

Some time after May 6, 1983, Schmit sold his Minneapolis home and retained a contract for deed interest in the property. On May 25, 1983, Schmit signed a promissory note for $25,300.00, which represented the total amount that Schmit owed Fox through May 1983. The note had a one-year term and included 8% annual interest.

In addition to the loans evidenced by the May 25th promissory note, Fox loaned Schmit money on three other occasions. On July 31, 1983, Schmit borrowed $150.00

---

1. The evidence relating to the amount of money loaned in each particular transaction is not consistent. For example, it is not clear whether Fox loaned Schmit $260.00 for motorhome cabinets and $240.00 for a desk, or $240.00 for motorhome cabinets and $260.00 for a desk. These inconsistencies, however, are inconsequential because Schmit does not dispute the total amount of the debt. Moreover, the specific amounts of money loaned were litigated in state court, and the doctrine of collateral estoppel precludes Schmit from contesting in this proceeding the state court's findings as to the amount of the debt. *See Global Plastics, Inc. v. Hauser,* 72 B.R. 165, 167 (Bkrtcy.D.Minn.1985).

and \$100.00 for an undisclosed purpose. On August 9, 1983, Fox paid \$1,446.00 on behalf of Schmit for a trip to Germany which Fox and Schmit took together. Finally, while on vacation in Germany, Fox loaned Schmit \$200.00 for spending money. No promissory notes were ever executed with respect to these loans.

Schmit never repaid any of the loans, and admits that he never intended to repay the loans unless "he came into money." Fox filed suit in the Hennepin County District Court to collect the debts. A trial was scheduled in the state court on November 21, 1985. Schmit did not file an answer to the complaint or appear at the trial. As a result, the state court entered a judgment for \$34,035.14 on December 2, 1985.[2]

After defaulting in the state court proceeding, Schmit liquidated various nonexempt assets to avoid attachment by Fox. On December 6, 1985, Schmit assigned his contract for deed interest in the Minneapolis property to Diversified Mortgage Company for \$17,500.00. The same day, Diversified sold the contract to the Land and Mortgage Company for \$20,250.00. Schmit also sold several antique cars to his brother, Raymond Schmit, in November and December 1985:

| Date | Year | Make | Amount Received |
|------|------|------|-----------------|
| 11/23/85 | 1961 | DeSoto | \$ 150.00 |
| 11/23/85 | 1983 | Trailer | 150.00 |
| 12/05/85 | 1926 | Ford 4 dr. | 200.00 |
| 12/05/85 | 1928 | Ford 4 dr. | 300.00 |
| 12/05/85 | 1929 | Ford 2 dr. | 1,500.00 |
| 12/05/85 | 1929 | Ford coupe | 500.00 |
| 12/05/85 | 1935 | Chevrolet 4 dr. | 500.00 |
| 12/05/85 | 1936 | Buick 4 dr. | 500.00 |
| 12/05/85 | 1939 | Chevy 2 dr. | 1,500.00 |
| 12/05/85 | 1939 | Mercury 4 dr. | 500.00 |
| Unknown | 1977 | Ford LTD | 700.00 [3] |
| | | Total | \$6,500.00 [4] |

He used the proceeds from both the contract for deed and car sales to reduce the mortgage on his personal residence in Ham Lake.

On December 11, 1985, Schmit filed a petition under Chapter 7 of the Bankruptcy Code and claimed his homestead as exempt under Minn.Stat. § 550.37 (1986). This adversary proceeding was commenced on March 17, 1986, objecting to Schmit's discharge under 11 U.S.C. § 727(a)(2)(A), or in the alternative, seeking a determination that Schmit's debts to Fox are nondischargeable under 11 U.S.C. § 523.

## II.

A discharge of debt is fundamental to the "fresh start" concept of the Bankruptcy Code. *See* H.R. No. 595, 95th Cong., 2d Sess. 384, *reprinted in*, 1978 U.S.Code Cong. & Admin.News 5963, 6340.[5] There-

under which corporations and partnerships may be discharged in liquidation cases, though they rarely are. The change in policy will avoid trafficking in corporate shells and in bankruptcy partnerships. "Individual" includes a deceased individual, so that if the debtor dies during the bankruptcy case, he will nevertheless be released from his debts, and his estate will not be liable for them. Creditors will be entitled to only one satisfaction—from the bankruptcy estate and not from the probate estate.

The next three grounds for denial of discharge center on the debtor's wrongdoing in or in connection with the bankruptcy case. They are derived from Bankruptcy Act § 14c. If the debtor, with intent to hinder, delay, or defraud his creditors or an officer of the estate, has transferred, removed, destroyed, mutilated, or concealed, or has permitted any such action with respect to, property of the debtor within the year preceding the case, or property of the estate after the commencement of the case, then the debtor is denied discharge.

H.R.Rep. No. 595, 95th Cong., 2d Sess. 384, *reprinted in*, 1978 U.S.Code Cong. & Admin. News 5963, 6340.

---

2. The state court made its findings of fact and conclusions of law, and entered judgment for: \$25,300.00 principal due on the May 6, 1983, promissory note; \$5,064.14 in interest on the May 6th note through November 21, 1985; \$1,921.00 for loans made after May 1983; and \$1,750.00 in attorney's fees.

3. Schmit also lists a 1977 Ford LTD in his B–2 "Personal Property" schedule. It is not clear whether this is the same 1977 Ford LTD that Schmit claims he sold to his brother.

4. There is no evidence to suggest that Schmit did not receive fair market value for the cars sold to his brother, or that he retained any interest in the cars.

5. H.R.Rep. No. 595 provides in part:

*§ 727 Discharge*

This section is the heart of the fresh start provisions of the bankruptcy law. Subsection (a) requires the court to grant a debtor a discharge unless one of eight conditions is met. The first condition is that the debtor is not an individual. This is a change from present law,

fore, objections to discharge under 11 U.S.C. § 727 are strictly construed in favor of the debtor. *See, e.g., First Beverly Bank v. Adeeb,* 787 F.2d 1339, 1342 (9th Cir.1986). At the same time, however, the objection provisions in § 727 were included to avoid the debtor's abuse of the Bankruptcy Code. *See Campbell v. Macartie,* 64 B.R. 335, 341 (Bkrtcy.W.D.Pa.1986); *United Bank v. Greenwalt,* 63 B.R. 555, 558–59 (Bkrtcy.D.Colo.1986); *Chrysler v. Capital Corp.,* 61 B.R. 878, 887 (Bkrtcy.S. D.N.Y.1986). As the equitable maxim goes, "he who seeks equity must do equity."

Fox objects to Schmit's discharge under 11 U.S.C. § 727(a)(2)(A). That section provides that a discharge shall be denied if:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition. . . .

Schmit does not dispute that he transferred property within one year of filing for bankruptcy. The only issue is whether he transferred the property with the requisite intent. The plaintiff must show that the debtor acted with actual intent to hinder, delay, or defraud a creditor. *Lovell v. Mixon,* 719 F.2d 1373, 1376–77 (8th Cir.1983); *City National Bank v. Bateman,* 646 F.2d 1220, 1222 (8th Cir.1981). This type of intent is rarely proven by direct evidence. Instead, it is usually inferred from the facts and circumstances of the debtor's conduct. *See Adeeb,* 787 F.2d at 1343; *First Texas Savings Association, Inc. v. Reed,* 700 F.2d 986, 991 (5th Cir.1983); *Salomon v. Kaiser,* 722 F.2d 1574, 1582 (2d.Cir.1983).

The mere fact that Schmit converted non-exempt property to exempt property just before bankruptcy is not enough to deny discharge. *Forsberg v. Security State Bank,* 15 F.2d 499, 501 (8th Cir.1926); *In re Olson,* 45 B.R. 501, 504–05 (Bkrtcy.D. Minn.1984). *See also Ford v. Poston,* 773 F.2d 52, 54 (4th Cir.1985); *First Texas Savings Association, Inc. v. Reed,* 700 F.2d 986, 991 (5th Cir.1983). However, when the conversion is accompanied by some extrinsic evidence establishing an intent to hinder, delay, or defraud a creditor, a discharge is properly denied. *See, e.g., Ford v. Poston,* 773 F.2d at 55; *Norwest Bank v. Tveten,* 70 B.R. 529 (Bkrtcy. D.Minn.1987). I find that Schmit had actual intent to defraud Fox, as well as, actual intent to hinder and delay Fox.

(A) *Intent to Defraud*

In *Conti-Commodity Services, Inc. v. Clausen,* the court identified six indicia of fraud;

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

44 B.R. 41–44 (Bkrtcy.D.Minn.1984). The last three indicia are particularly applicable in this case. Schmit borrowed money from Fox over several years, admittedly never intending to repay her. Moreover, he promised Fox that she would receive the proceeds of the sale of his Minneapolis home if Fox would loan him the money he needed to buy his new home in Ham Lake. Schmit sold his Minneapolis home in May 1983, but kept the proceeds of the contract for deed. After Fox obtained a state court judgment in November of 1985, Schmit liquidated most of his nonexempt property, including the contract for deed promised to Fox, and then filed for bankruptcy. The primary debt that Schmit seeks to dis-

charge is the $34,035.14 state court judgment owed to Fox,[6] and there is no doubt the purpose of the transfers followed by the bankruptcy filing was to avoid paying Fox. Under these circumstances, I find that Schmit intended to defraud Fox.

### (B) *Intent to Hinder and Delay*

Fraudulent intent is not necessary to sustain an objection to discharge under § 727(a)(2)(A). *See Huntington National Bank v. Schwartzman,* 63 B.R. 348, 360 (Bktcy.S.D.Ohio 1986); *Federal Deposit Insurance Corp. v. Morris,* 51 B.R. 462, 464 (Bkrtcy.E.D.Tenn.1985). A finding that the debtor had actual intent to hinder or delay[7] creditors is sufficient. *First Beverly Bank v. Adeeb,* 787 F.2d 1339 (9th Cir.1986).

There are relatively few cases construing a denial of discharge specifically based on the debtor's hindering and delaying creditors. *See, e.g., First Beverly Bank v. Adeeb,* 787 F.2d 1339 (9th Cir.1986) (debtor who transferred property to "trusted" friends in order to avoid attachment by creditors was denied a discharge); *Norwest Bank Nebraska v. Tveten,* 70 B.R. 529 (Bktcy. D.Minn.1987) (debtor who liquidated approximately $700,000 in nonexempt assets to purchase annuities and life insurance contracts which the debtor claimed as exempt under state law was denied discharge). In both *Adeeb* and *Tveten* there was a scheme or pattern of conduct which demonstrated the debtor's actual intent to hinder and delay creditors. Similarly, the facts of this case evidence a pattern of conduct designed to frustrate Fox's collection efforts. I find that Schmit converted the property with actual intent to hinder and delay.

### III.

Rita Fox has proven two separate grounds for denying Schmit's discharge under § 727(a)(2)(A). Her complaint asks for the following relief:

(1) determination that the debts are nondischargeable,

(2) denial of Schmit's discharge,

(3) constructive trust or equitable lien on Schmit's homestead, and

(4) any other relief, including costs and attorney's fees.

Because I am sustaining Fox's objection to Schmit's discharge, it is unnecessary to decide whether Schmit's debts to Fox are nondischargeable under 11 U.S.C. § 523.

Fox's request that a constructive trust or equitable lien be imposed on Schmit's homestead is denied. Apparently, she has abandoned that request since it was not argued in the trial brief or at trial. In any case, there is insufficient evidence to support the imposition of a constructive trust.

Finally, Fox asks for costs and attorney's fees. I will allow $60 for filing fees pursuant to 28 U.S.C. § 1920, but deny her request for any other costs and fees. Fox has no contractual right to attorney's fees and has not demonstrated cause for an award of attorney's fees under § 1920. Moreover, there is no evidence (e.g., a summary of services and time) to support an award for any other costs or fees.

THEREFORE, IT IS ORDERED:

1. Edwin G. Schmit's discharge is denied.

2. Rita Fox shall recover from Edwin G. Schmit the sum of $60.00.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

6. Other than debt to Fox, Schmit has only one other unsecured debt in the amount of $5,300.

7. The language of § 727(a)(2)(A) clearly contemplates three separate grounds for denying a debtor's discharge: hindering, delaying, or defrauding creditors. 11 U.S.C. § 727(a)(2)(A). However, I see no discernable difference between an intent to hinder and an intent to delay creditors.