# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

———

No. 00-6117NI

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| J. Marshall Harvey Korte, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | |
| | * | |
| J. Marshall Harvey Korte, | * | Appeal from the United |
| | * | States Bankruptcy Court |
| Appellant, | * | for the Northern District |
| | * | of Iowa |
| v. | * | |
| | * | |
| United States of America | * | |
| Internal Revenue Service, | * | |
| | * | |
| Appellee. | * | |

———

Submitted: April 16, 2001
Filed: May 7, 2001

———

Before WILLIAM A. HILL, SCOTT, and DREHER, Bankruptcy Judges.

———

DREHER, Bankruptcy Judge.

Debtor J. Marshall Harvey Korte ("Debtor") appeals from the bankruptcy court's[1] decision denying Debtor his discharge pursuant to §§ 727(a)(2)(A) and (a)(4)(A) of the Bankruptcy Code. For the reasons set forth below, we affirm the decision of the bankruptcy court.

FACTS and PROCEDURAL HISTORY

In May 1988, Earl F. McGrane, a friend of Debtor's father, created "Amstar Trust" ("Trust"), a "Common Law Trust Organization."[2] Debtor was the "Grantor" of the Trust, and Fred J. Korte, Debtor's father, was "Trustee" of the Trust. The purpose of the Trust, according to Debtor's father, was to protect assets for the Trust's beneficiaries who were the minor daughters of Fred J. and Norma Korte.

Debtor transferred extensive personal property to the Trust: jewelry, clothing, antiques, collectibles, children's toys, two trucks, a car, two motorbikes, a snowmobile, a camper, bedroom furnishings, office furniture, sports equipment, shop tools and equipment, investments, dining room furniture, toothbrushes, razors, towels, two tractors, three augers, an auger wagon, two gravity boxes, a grain cleaner, a corn head,

---

[1]The Honorable William L. Edmonds, United States Bankruptcy Judge for the Northern District of Iowa.

[2]While the question of the validity of this trust is not before us, we underscore that such trust arrangements are closely scrutinized by the courts and have long been recognized as merely being employed by debtors as a mechanism to shield assets from their creditors. See, e.g., United States v. Graham, 60 F.3d 463, 469 (8th Cir. 1995) (affirming lower court's imposition of criminal penalties against attorney who "create[d] a fraudulent trust document to remove his only asset from the bankruptcy estate"); Lewis v. Haworth (In re Haworth), 253 B.R. 478, 481 (Bankr. D. Wyo. 2000) (finding that "trust" was not a legal entity to which debtor could transfer property under Wyoming law; thus, property conveyed to "trust" prior to bankruptcy became property of the estate); In re Constitutional Trust # 2-562, 114 B.R. 627, 631 (Bankr. D. Minn. 1990) (finding that "revocable domestic trust" formed "under the common law of contracts" and "protected by" the United States Constitution had as its only function the holding of title to certain real estate and was not engaged in a business such that it could qualify for Chapter 11 bankruptcy protection); Giove v. Stanko, 977 F.2d 413, 417 (8th Cir. 1992) (setting aside as fraudulent transfers made to trust upon finding that transferor "was attempting to shield his assets from current and future creditors").

a combination gravel and grain box, certain tillage equipment, a corn planter, and various tanks. Though he was Grantor of the Trust, Debtor did not take possession of or title to the subsequently-issued Trust certificates. Rather, he directed they be transferred to his two stepsisters, the Trust's beneficiaries.

In March 1989, forty acres of real property, which included some tillable acreage, a house, and an apartment, located at 2966 - 380th Street in Osage, Iowa was added to the Trust *res*. The property had previously belonged to Debtor's father and stepmother. To prevent foreclosure on the property in January 1987, Osage Farmers National Bank (Bank") agreed to sell the property on contract to Debtor. After Debtor, with financial help from family members, completed the payments, the Bank deeded the property to the Trust.

In the years after the Trust's creation, Debtor continued to use the personalty, household items, real property, and equipment he transferred to the Trust. For example, he used the farm equipment and tools for his custom crop farming business in 1997, 1998, and into 1999. He also had access to and spent some time at the apartment located on the real property. In addition, many of the personal and household items transferred to the Trust could be found in the apartment.

On November 25, 1998, Debtor filed a Chapter 7 bankruptcy petition. In his schedules, Debtor listed his residence as 2966 - 380th Street in Osage, Iowa. Debtor listed only three creditors: (1) the Internal Revenue Service ("IRS") for debts incurred between 1989 and 1994 in the amount of $79,654.38; (2) the Iowa Department of Revenue for debts incurred between 1989 and 1994 in the amount of $11,397.94; and (2) Marilyn Korte, Debtor's mother, for a debt incurred in 1989 in the amount of $9,139. Debtor indicated the he had no ownership interests in real property. As for personal property, Debtor listed $1,265 in assets: (a) $50 cash; (b) $560 normal furnishings Osage, Iowa; (c) $150 books, tapes, records; (d) $155 wearing apparel; (e) $50 Camaro (1978); (f) $50 Buick wagon (1980); (g) $100 Ford Escort (1985); and (h) $150 Kawasaki snowmobile (1978). He claimed as exempt the household goods, the wearing apparel, and the 1985 Ford Escort. In his Statement of Financial Affairs, Debtor answered

"none" when asked to "[l]ist all property owned by another person that the debtor holds or controls." Debtor signed his schedules.

Almost one month after he filed his petition, the first meeting of creditors was held. At that meeting, Debtor said that he had transferred only a couple of vehicles to the Trust. He made no mention of any of the other personal property or farming equipment the Trust documents show Debtor transferred to the Trust. He also stated that he had listed all of his real and personal property in his schedules.

On April 6, 1999, the IRS commenced an adversary proceeding against Debtor.[3] Specifically, the IRS alleged that Debtor should be denied his discharge for having transferred or concealed assets within one year of the petition date with an intent to defraud his creditors under § 727(a)(2)(A) and for having falsely filled out his schedules under § 727(a)(4)(A). On November 27, 2000, the bankruptcy court entered an order denying Debtor his discharge on both grounds.

In its decision, the bankruptcy court first addressed Debtor's contention that the IRS could not bring an objection to discharge action. Specifically, Debtor disputed his tax liability, asserting that he owed nothing to the IRS; therefore, he argued, the IRS lacked standing to object to entry of his discharge. The bankruptcy court rejected Debtor's argument, reasoning that, under § 727(c)(1), the IRS qualified as a "creditor" which may object to the granting of a debtor's discharge because it holds a "claim" as that term is defined in the Bankruptcy Code.

Next, under § 727(a)(2)(A), the bankruptcy court found that Debtor had concealed personal property with an intent to hinder, delay, or defraud his creditors within the year prior to the petition filing date. The bankruptcy court made clear that the initial transfer or concealment of Debtor's assets took place

---

[3]The IRS originally filed suit against Debtor on August 17, 1998, seeking to reduce to judgment unpaid federal tax assessments against Debtor and to foreclose on certain real property. That suit was interrupted by the imposition of the automatic stay.

4

almost a decade before he filed for bankruptcy. Even so, relying on the "continuous concealment doctrine," the bankruptcy court found that Debtor's concealment of his assets in the year prior to bankruptcy coupled with his continued business and personal use of those assets warranted a denial of discharge. The bankruptcy court also found that the IRS presented insufficient evidence to show Debtor retained an interest in the real property located in Osage, Iowa.

Third, on the § 727(a)(4)(A) claim, the bankruptcy court found Debtor fraudulently filled out his schedules and lied under oath at the first meeting of creditors when he failed to disclose his interests in and transfers of certain personalty. He knew, the bankruptcy court concluded, that his schedules and testimony were false. Immediately before and after the petition filing date, he not only possessed, but also used much of the personal property and equipment he had ostensibly transferred to the Trust.

Debtor appealed[4] the bankruptcy court's decision denying Debtor his discharge under §§ 727(a)(2)(A) and (a)(4)(A).

ISSUES

This case presents two main issues on appeal.[5] The first is whether the bankruptcy correctly determined that the IRS had standing to commence an adversary proceeding against Debtor pursuant to § 727. The second is whether the bankruptcy court correctly denied the Debtor his discharge: in particular,

---

[4]The IRS initially argued that Debtor had not timely filed his Notice of Appeal. The issue was considered by an administrative panel which determined that Debtor had timely taken his appeal.

[5]In his appellate brief, Debtor raises several additional issues, most of which relate to his firmly-held belief that he does not have to pay taxes or his assertion that the IRS has never produced "law" stating that Debtor is required to file a tax return. These issues are wholly unrelated to the two dischargeability issues properly before us. We could not determine such issues even if they were properly before us because Debtor failed to provide us with a transcript of the hearing in which he claims to have raised all of these arguments. We also decline to address Debtor's assertions that the bankruptcy court treated him unfairly or prejudicially when it refused to continue the trial in this matter despite learning that Debtor had retained counsel fewer than 24 hours before the time of trial.

whether the bankruptcy court correctly determined that under § 727(a)(2)(A), Debtor transferred and concealed assets with the intent to hinder or defraud his creditors and that under § 727(a)(4)(A), Debtor falsely filled out his schedules and lied under oath about his assets at the first meeting of creditors.

## STANDARD OF REVIEW

The appellate court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. See Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999); Bachman v. Laughlin (In re McKeeman), 236 B.R. 667, 670 (B.A.P. 8th Cir. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). A bankruptcy court's factual findings may not, however, be overturned on appeal merely because the appellate court may have decided the issue differently. See Anderson, 470 U.S. at 573.

In this case, the bankruptcy court's determination that the IRS had standing to bring the adversary proceeding objecting to the Debtor's discharge is a question of law subject to *de novo* review. See In re FedPak Sys., Inc., 80 F.3d 207, 211 (7th Cir. 1995); Simon v. New Ctr. Hosp. (In re New Ctr. Hosp.), 187 B.R. 560, 566 (E.D. Mich. 1995) ("Applying the de novo standard for review of questions of law, the decision of the Bankruptcy Court as to standing is affirmed."); Manson v. Stacescu, 11 F.3d 1127, 1130 (2d Cir. 1993); Argeras v. GF Corp., 140 B.R. 884, 885 (N.D. Ohio 1992).

A bankruptcy court's determination that a debtor concealed or transferred assets with an intent to hinder or defraud his creditors under § 727(a)(2)(A) is reviewed for clear error on appeal, as is the bankruptcy court's determination that a debtor knowingly and fraudulently made a false oath or account under § 727(a)(4)(A). See, e.g., Secor Bank v. Tschirn (In re Tschirn), No. 92-0868, 1992 WL 142699,

at \*4 (E.D. La. June 15, 1992) ("The finding of the bankruptcy court regarding whether the debtor acted with the intent to hinder, delay or defraud creditors is a factual one, and may set aside only if clearly erroneous." (citing <u>Hibernia Nat'l Bank v. Perez (In re Perez)</u>, 954 F.2d 1026, 1029 (5th Cir. 1992)); <u>Cepelak v. Sears (In re Sears)</u>, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) (stating that the question of a debtor's knowledge and intent under § 727(a)(4) is "a matter of fact"); <u>Casey v. Kasal</u>, 223 B.R. 879, 884 (E.D. Pa. 1998) ("The statement must be knowingly fraudulent; there must be an intent to hinder, delay or defraud for the actions to have been done knowingly and fraudulently. ... Fraudulent intent is a question of fact." (citations omitted)).

## DISCUSSION

### A.    <u>Standing</u>

As a threshold matter, Debtor suggested that the IRS lacks standing to bring an adversary proceeding to object to entry of Debtor's discharge. Specifically, Debtor alleged that because he disputes the fact that he owes any taxes, the IRS has no interest or stake in his bankruptcy. In response, the IRS maintained it is a creditor which has standing to object to Debtor's discharge, even if Debtor's tax liability is disputed. Reasoning that the IRS qualified as a creditor who holds a claim, the bankruptcy court determined that the IRS had standing to commence an adversary proceeding objecting to Debtor's discharge.

Section 727 governs discharges in bankruptcy generally. Subsection (c)(1) of that provision specifically provides that "[t]he trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section." 11 U.S.C. § 727(c)(1) (1994). A "creditor," in turn, is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (1994). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) (1994). Rule

7001(4) of the Federal Rules of Bankruptcy Procedure states that "a proceeding to object to or revoke a discharge" is an adversary proceeding. Fed. R. Bankr. P. 7001(4) (1994). As stated in Rule 4004(a), an adversary proceeding objecting to a debtor's discharge must be commenced within certain time limits. See Fed. R. Bankr. P. 4004(a) (1994).

In this case, the bankruptcy court correctly determined that the IRS had standing to commence an adversary proceeding objecting to Debtor's discharge. Debtor listed the IRS as one of only three creditors in his bankruptcy schedules. Moreover, though Debtor may dispute the amount or nature of the IRS's claim or that claim may ultimately be reduced or disallowed, the IRS nevertheless holds a "claim," thereby qualifying it as a "creditor" under § 727(c)(1) with standing to object to Debtor's discharge. Finally, the IRS complied with all of the procedural requisites in this instance. The IRS commenced an adversary proceeding, as required under Rule 7001(4), within the time limits established under Rule 4004(a).

B.     Denial of Discharge

The IRS sought a denial of the Debtor's discharge on two grounds under § 727. Generally speaking, denying the debtor a discharge is a "harsh and drastic penalty." American Bank v. Ireland (In re Ireland), 49 B.R. 269, 271 n.1 (Bankr. W.D. Mo. 1985). See generally Peoples State Bank v. Drenckhahn (In re Drenckhahn), 77 B.R. 697, 705 (Bankr. D. Minn. 1987) (recognizing that denial of discharge is a "harsh sanction"); McDonough v. Erdman (In re Erdman), 96 B.R. 978, 984 (Bankr. D.N.D. 1988) ("Denying a discharge to a debtor is a serious matter not to be taken lightly by a court."). Accordingly, the denial of discharge provisions of § 727 "are strictly construed in favor of the debtor." Fox v. Schmit (In re Schmit), 71 B.R. 587, 589-90 (Bankr. D. Minn. 1987). Importantly, however, § 727 was also included to prevent the debtor's abuse of the Bankruptcy Code. See id. at 590.

The burden of proof in a denial of discharge case is on the objecting party. See Fed. R. Bankr. P. 4005; Ramsay v. Jones (In re Jones), 175 B.R. 994, 997 (Bankr. E.D. Ark. 1994). The objecting party, the IRS in this case, must prove each element by a preponderance of the evidence. See, e.g.,

8

Grogan v. Garner, 498 U.S. 279, 285 (1991); Kirchner v. Kirchner (In re Kirchner), 206 B.R. 965, 973 (Bankr. W.D. Mo. 1997) (citing Barclays/American Bus. Credit v. Adams (In re Adams), 31 F.3d 389 (6th Cir. 1994)); Kaler v. Craig (In re Craig), 195 B.R. 443, 448-49 (Bankr. D.N.D. 1996)(citing, *inter alia*, Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244 (4th Cir. 1994); First Nat'l Bank v. Serafini (In re Serafini), 938 F.2d 1156 (10th Cir. 1991)).

### 1. Concealment of Assets

The first ground on which the IRS asked the bankruptcy court to deny Debtor his discharge is § 727(a)(2)(A). The IRS alleged that Debtor concealed within a year of the petition filing date various assets with the intent to hinder or defraud his creditors, and the bankruptcy court agreed. Invoking the continuous concealment doctrine, the bankruptcy court reasoned that even though Debtor actually transferred personalty and agricultural equipment to the Trust more than one year before filing a bankruptcy petition, he continued to use that property and failed to disclose any kind of interest in that property in his schedules or at the first meeting of creditors.

> Section 727(a)(2)(A) provides in relevant part that a debtor's discharge should be denied when:
>
> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed ... property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A) (1994). To succeed on a § 727(a)(2)(A) claim, the objecting creditor must prove by a preponderance of the evidence: (1) that the act complained of was done within one year prior to the date of petition filing; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay, or defraud either a creditor or an officer of the estate. Kaler v. Craig (In re Craig), 195 B.R. 443, 448 (Bankr. D.N.D. 1996).

9

Applying the first three elements, the statute requires that the debtor transfer, remove, destroy, or conceal his property within one year of the date of the petition filing. Relevant to this case, "concealment is a continuing event and under the established doctrine of 'continuing concealment,' a concealment that originated outside the one year limitation period is within the reach of § 727(a)(2)(A) if the concealment continued on into the year preceding the filing coupled with the requisite intent." In re Craig, 195 B.R. at 449 (citing Rosen v. Bezner, 996 F.2d 1527 (3d Cir. 1993); In re Olivier, 819 F.2d 550 (5th Cir. 1987)). Asset concealment "is typically found to exist where the interest of the debtor in property is not apparent but where actual or beneficial enjoyment of that property continued." In re Craig, 195 B.R. at 449 (citing as illustrative In re Towe, 147 B.R. 545 (Bankr. D. Mont. 1992)).

Here, Debtor transferred legal title to the personalty and agricultural equipment to the Trust well outside the one year window, but he concealed that property after the actual transfer and into the requisite time frame. He used both the personalty while he resided at the apartment and the equipment in his farming operations in the months immediately prior to filing the bankruptcy petition. See Rosen v. Bezner, 996 F.2d 1527, 1532 (3d Cir. 1993) ("In a situation involving a transfer of title coupled with retention of the benefits of ownership, there may, indeed, be a concealment of property. Where this is the case, however, the concealment is present not because retention of the benefits of ownership conceals the fact that the debtor no longer has legal title, but rather because the transfer of title represents to the world that the debtor has transferred away all his interest in the property while in reality he has retained some secret interest—a secret interest of which retention of the benefits of ownership may be evidence."). The case law and the evidence support the bankruptcy court's conclusion that the IRS, relying on the continuous concealment doctrine, met its burden of proof on the first, second, and third elements.

In terms of the fourth element, while the objecting creditor need not show fraudulent intent on the debtor's part to succeed on a § 727(a)(2)(A) claim, it must show the debtor acted with actual intent to hinder, delay, or defraud a creditor. See Fox v. Schmit (In re Schmit), 71 B.R. 587, 590, 591 (Bankr. D. Minn. 1987) (citing Lovell v. Mixon), 719 F.2d 1373, 1376-77 (8th Cir. 1983); Huntington Nat'l Bank

v. Schwartzman (In re Schwartzman), 63 B.R. 348, 360 (Bankr. S.D. Ohio 1986)). Proving the requisite actual intent with direct evidence is difficult. See In re Schmit, 71 B.R. at 590. Thus, such actual intent may be "inferred from the facts and circumstances of the debtor's conduct." Id.

In this case, the bankruptcy court found that Debtor concealed his assets, specifically his personalty and equipment, with the express intent to hinder the taxing authorities in their efforts to collect outstanding taxes from him.[6] Indeed, though not required under the statute, the bankruptcy court went so far as to infer fraudulent intent. To support its conclusion, the bankruptcy underscored that other than his mother, the taxing authorities were Debtor's only creditors; that Debtor adamantly maintained the IRS has no authority to assess taxes against him or to levy against his property; and that Debtor ostensibly transferred assets to close family members even as he retained control over and use of such assets.

Case authority indicates that retention of such a beneficial use interest, coupled with Debtor's attempts to evade payment of taxes, demonstrated the kind of actual intent § 727(a)(2)(A) requires. See generally In re Craig, 195 B.R. at 450 ("Courts have long been concerned over situations where ... debtors shield their property from the reach of creditors by placing legal title in others–all the while retaining an equitable interest."); Keeney v. Smith (In re Keeney), 227 F.3d 679, 683 (6th Cir. 2000) (finding that bankruptcy court correctly inferred requisite intent to hinder or defraud creditors where debtor concealed his beneficial interest in real property which was titled in his parents' names but on which he resided rent-free and had made several mortgage payments); Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1241 (9th Cir. 1997) ("Evidence was adduced below that allowed the court to infer that the debtor retained and concealed from her creditors a secret benefit in regard to the deed of trust."); Coggin v. Coggin (In re

---

[6]The bankruptcy court also concluded that there was insufficient evidence to show Debtor retained an interest in the real property formerly owned by his father and stepmother in the year prior to bankruptcy. Because we agree with the bankruptcy court's conclusion that Debtor retained an interest in other personal property and equipment sufficient to deny Debtor his discharge under § 727(a)(2)(A), we need not consider whether the bankruptcy court's decision regarding the Debtor's interest, or lack thereof, in the real property was clearly erroneous.

Coggin), 30 F.3d 1443, 1451 (11th Cir. 1994) (affirming bankruptcy court's finding that debtor's transfer of $13,000 to his son was carried out with intent to hinder, defraud, or delay where transfer occurred while debtor was insolvent, there were many existing creditors, and transfer was made to avoid claims of debtor's ex-wife). While we need not decide whether Debtor's actions rose to the level of fraudulent intent, we find the bankruptcy court's conclusion that Debtor transferred and concealed his personalty and farming equipment with the actual intent to hinder the taxing authorities' collection efforts is well-supported by the evidence and not clearly erroneous. Therefore, we affirm the bankruptcy court's denial of Debtor's discharge under § 727(a)(2)(A).

### 2. False Oath

The second ground on which the IRS asked the bankruptcy court to deny Debtor his discharge is § 727(a)(4)(A). The IRS argued Debtor failed to disclose certain assets and property interests on his schedules and to answer truthfully questions about those assets and interests at the first meeting of creditors. Specifically, according to the IRS, Debtor lied to the trustee when he responded that he had listed all of his property in his schedules and that he had transferred only a couple of vehicles to the Trust. In response, Debtor maintained he had no interest in those assets and was, therefore, not required to schedule them and that he was wholly forthright with the trustee at the first meeting of creditors.

Section 727(a)(4)(A) "provides a harsh penalty for the debtor who deliberately secretes information from the court, the trustee, and other parties in interest in his case." Cepelak v. Sears (In re Sears), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000). That provision provides in relevant part that a debtor is entitled to a discharge unless he "knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. § 727(a)(4)(A) (1994). For such a false oath or account to bar a discharge, the false statement must be both material and made with intent. See Mertz v. Rott, 955 F.2d 596, 597-98 (8th Cir. 1992); Palatine Nat'l Bank v. Olson (In re Olson), 916 F.2d 481, 483-84 (8th Cir. 1990); Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984)). Noting that the "threshold to materiality is fairly low," this court recently articulated the standard for materiality: "The

12

subject matter of a false oath is 'material' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." In re Sears, 246 B.R. at 347 (quoting In re Chalik, 748 F.2d at 618). The question of a debtor's "knowledge and intent under § 727(a)(4) is a matter of fact." In re Sears, 246 B.R. at 347 (citing In re Olson, 916 F.2d at 484). Intent "can be established by circumstantial evidence," and "statements made with reckless indifference to the truth are regarded as intentionally false." Golden Star Tire, Inc. v. Smith (In re Smith), 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993) (citing In re Sanders, 128 B.R. 963, 964 (Bankr. W.D. La. 1991)).

As § 727(a)(4)(A) makes clear, "[t]he Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind." Fokkena v. Tripp (In re Tripp), 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998) (citing In re Craig, 195 B.R. 443, 451 (Bankr. D.N.D. 1996)). The debtor's "petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." In re Sears, 246 B.R. at 347 (citing Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992)). See generally National Am. Ins. Co. v. Guarjardo (In re Guajardo), 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997) ("[T]he Bankruptcy Code requires disclosure of all interests in property, the location of all assets, prior and ongoing business and personal transactions, and, foremost, honesty. The failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole."). Statements made in schedules are signed under penalties of perjury and have "the force and effect of oaths," and testimony elicited at the first meeting of creditors is given under oath. In re Smith, 161 B.R. at 992 (citing In re Sanders, 128 B.R. 963 (Bankr. W.D. La. 1991)).

In this case, the bankruptcy court applied the correct legal standard, and its findings were not clearly erroneous. Debtor failed to disclose on his schedules and in his testimony at the first meeting of creditors the interests he retained in property transferred to the Trust. Debtor retained actual possession

13

of much of that property and continued to use it both personally and in his business. Debtor's testimony at the first meeting of creditors also appears to have been untruthful on another ground. Debtor testified he transferred only some worthless vehicles to the Trust, though the Trust documents clearly show Debtor purportedly transferred extensive personalty and equipment to the Trust.

Next, Debtor's omissions and misstatements were certainly, as the bankruptcy court concluded, material. Applying the materiality standard set forth in In re Sears, they related directly to Debtor's business dealings, the discovery of his assets, and the existence and disposition of his property. In re Sears, 246 B.R. at 347.

Finally, citing an abundance of circumstantial evidence, the bankruptcy court determined that Debtor intentionally made materially false statements on his schedules and in his testimony. We agree with the bankruptcy court that Debtor not only clearly knew what he was doing, he intended to do exactly what he did. Debtor tried to portray himself as propertyless even as he continued to possess and make use of extensive personalty and valuable farming equipment. Debtor transferred all of his assets to a family trust to protect them and, at the same time, to deceive, in a blatantly defiant manner, the taxing authorities. Given the evidence presented, the bankruptcy court's denial of Debtor's discharge under § 727(a)(4)(A) was not clearly erroneous.

ACCORDINGLY, having found that Debtor's arguments lack merit and that his appeal borders on being frivolous,[7] we affirm the decision of the bankruptcy court to deny Debtor his discharge under §§ 727(a)(2)(A) and (a)(4)(A).

---

[7]Bankruptcy Appellate Panels may award damages or impose sanctions against a party for a frivolous appeal under Rule 8020. See Fed. R. Bankr. P. 8020. That rule, however, explicitly provides that such an award can be entertained only upon notice from the court or a separately-filed motion. See Fed. R. Bankr. P. 8020. Thus, although we may deem Debtor's appeal frivolous, we cannot impose sanctions or award damages against Debtor at this juncture. See, e.g., Wendover Fin. Servs. v. Hervey (In re Hervey), 252 B.R. 763, 769 (B.A.P. 8th Cir. 2000); Williams v. Kemp (In re Kemp), 242 B.R. 178, 183 (B.A.P. 8th Cir. 1999); Ebersold v. DeLaughter (In re DeLaughter), 213 B.R. 839, 842 n.6 (B.A.P. 8th Cir. 1997).

A true copy.

Attest:

                  CLERK, U.S. BANKRUPTCY APPELLATE PANEL

                  FOR THE EIGHTH CIRCUIT