# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 11-6055

In re:                          *
                                *
Jay Freese,                     *
                                *
    Debtor.              *
                                *
Lincoln Savings Bank,           *     Appeal from the
                                *     United States
    Plaintiff-Appellee,  *     Bankruptcy Court for the
                                *     Northern District of Iowa
    v.                   *
                                *
Jay Freese,                     *
                                *
    Defendant - Appellant.  *

Submitted: November 18, 2011
Filed: December 14, 2011

Before SCHERMER, VENTERS and SALADINO, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

The Debtor, Jay Freese (the "Debtor"), appeals from the ruling of the bankruptcy court[1] denying his discharge pursuant to 11 U.S.C. §727(a)(4).[2] We have jurisdiction over this appeal from the final judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## ISSUE

The issue on appeal is whether the bankruptcy court properly denied the Debtor's discharge under §727(a)(4)(A).

## BACKGROUND

On September 10, 2009, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor's Schedules and Statement of Financial Affairs were signed under oath and have not been amended. The Debtor listed one unsecured creditor and two secured creditors, one of which is the Appellee, Lincoln Savings Bank (the "Bank").

The Bank brought an action seeking to deny the Debtor's discharge based on, among other things, the making of a false oath in connection with numerous inaccurate statements made in his Schedules and Statements. In summary, the Bank produced evidence that the Debtor failed to disclose in his Schedules and Statements

---

[1] The Honorable Paul J. Kilburg, United States Bankruptcy Judge for the Northern District of Iowa.

[2] In his Notice of Appeal, the Debtor also indicates that he appeals from "any other preliminary orders therein, entered in this adversary proceeding on the 30th day of June, 2011, docket number 38 and docket number 39." The only issue that the Debtor discussed in his briefs and at oral argument was the denial of his discharge under §727(a)(4), and this Court will consider any additional bases for appeal to be abandoned. We note that in the bankruptcy court, the Bank also sought denial of the Debtor's discharge under §§727(a)(2), (3) and (5), but the bankruptcy court denied the Debtor's discharge under only §727(a)(4).

and failed to satisfactorily explain the omissions of: (1) the existence of the Debtor's livestock business; (2) the gross income from his livestock business; (3) over $25,000 of income from 2007; (4) transfers of two ATVs, a bobcat and a tractor; and (5) co-ownership of the car his wife drives.

According to the Bank, the Debtor provided false answers in response to Questions 1 and 18 on his Statement of Financial Affairs. Question 1 requires a debtor to "[s]tate the gross amount of income the debtor has received from employment, trade, or profession, or from the operation of the debtor's business. . ." It requires this information for the calendar year when the bankruptcy petition was filed, and for the two years immediately preceding that calendar year. In response to Question 1, the Debtor included only income from his employment at USS Polaris, although he admitted in the parties' Joint Pre-Trial Statement that "[d]uring the two years and nine months prior to the debtor's filing of bankruptcy he engaged in a sole proprietorship under which he purchased and sold hogs." The Debtor's farming operations had gross income of $491,637 in 2007, and its expenses were $592,358 that year. The farming operations also operated at a loss in 2008, but it had gross income of $800,103 and expenses of $917,756.

The Debtor testified at the trial. He explained that he had a difficult time filling out the bankruptcy Schedules and Statements and claims that he did the best that he could, but that he read too much into the questions. He also explained that he was not attempting to mislead, conceal or defraud anyone and that he believes he answered the question on his Schedules and Statements correctly. At the same time, the Debtor has acknowledged that his Schedules and Statements do not disclose the following income for 2007: (a) $21,014 from First Choice Livestock LLC; and (b) $4,050 from Unique Swine System Inc.

The Debtor testified that he thought Question 1 on the Statement of Financial Affairs was asking for income that he made over his expenses. His understanding

was that gross income was the amount if you make money and because he did not make money on his hog business, there was nothing for him to report. However, when asked about gross income from his employment at USS Polaris, the Debtor explained that he reported the amount he was paid before he paid his expenses, and the bankruptcy court found that with respect to his income from USS Polaris, "Debtor recognized that gross income was total income and net income was the actual amount he got paid." In addition, the Debtor acknowledged that his hog operation had existed since 2002 and that it had nearly $2 million in sales. The Debtor explained that the $21,014 he received in 2007 from First Choice Livestock LLC represented a refund of his prepayment for medicine and additives for pigs. Prior to 2007, he had been a member of First Choice Livestock LLC. On appeal, the Debtor admitted that he simply forgot to disclose the $4,050 of income in 2007 from Unique Swine System Inc., a pig broker business for which the Debtor had worked in sales. The Debtor had also worked in sales for another company.

In response to Question 18 on the Statement of Financial Affairs, requesting information about a debtor's businesses within six years before the bankruptcy filing, the Debtor indicated "None." When asked about his hog business and farming, he explained that farming was not a business in his case and that "this was like hobby farming," and noted that he had no land and rented all his buildings. The Debtor acknowledged, however, that in his 2007 U.S. Form 1040, he listed his occupation as "livestock manager."

The Statement of Financial Affairs also asks a debtor to disclose for the two years prior to the filing of the case "all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security." The Debtor's Schedules and Statements do not include certain pre-petition transfers of property by the Debtor of equipment that he admittedly used at least some of the time in his hog business. The Debtor testified that within two years before he filed his bankruptcy petition, he sold a Bobcat S175

and a Kubota tractor loader and put the proceeds in his retirement account. He traded a Polaris 700 ATV and a Polaris Ranger ATV with his employer for a corn stove. In finding that these items constituted a part of the Bank's collateral, the bankruptcy court relied upon the Commercial Security Agreement dated July 19, 2007, which gave the Bank a security interest in "Equipment," which was defined as: "Equipment: All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts and tools." The Debtor testified, however, that he did not think the Bank took any collateral for its loan.[3] He also claimed that the sales and transfer of the equipment were all made in the ordinary course of his financial affairs and did not need to be reported.

Unfortunately, the Debtor has not provided a copy of the security agreement to us and, therefore, he has not rebutted the bankruptcy court's finding that the Bank had a security interest in the Bobcat S175, Kubota tractor loader, Polaris 700 ATV and Polaris Ranger ATV.

In his Schedules, the Debtor failed to disclose his ownership of a 2003 Ford Explorer that he held jointly with his wife. At trial, he acknowledged that he had an ownership interest in the vehicle based on the title, but testified that he did not disclose it on his schedules because it was his wife's. The Debtor testified that he did not use a bookkeeper and that he was in possession of his books and records. He provided a copy of information about his business operations to a third-party only for the purpose of preparing his tax returns.

The Debtor explained that he gave the Chapter 7 trustee all the paperwork she requested, that he answered her questions fully at his meeting of creditors, that his paperwork was transparent about his farm operation and that he also gave paperwork

---

[3] The Debtor's Schedules listed the property subject to the Bank's lien as "Checks from Tyson Foods representing proceeds of livestock."

about his farm operations to the Bank. He also noted that the trustee did not ask him to amend his Schedules and Statements after the §341 meeting. He maintains that all of the necessary information was disclosed.

## STANDARD OF REVIEW

We review findings of fact for clear error and conclusions of law *de novo*. *Korte v. Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 469 (B.A.P. 8th Cir. 2011) (citations omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). We give due regard to the bankruptcy court's opportunity to judge the credibility of witnesses. Fed. R. Bankr. P. 8013.

## DISCUSSION

Denial of a discharge is a harsh remedy and, accordingly, the provisions under §727 of Title 11 of the United States Code (the "Bankruptcy Code") "are strictly construed in favor of the debtor." *See Korte*, 262 B.R. at 471 (quoting *Fox v. Schmidt (In re Schmidt)*, 71 B.R. 587, 589-90 (Bankr. D. Minn. 1987)). To prevail in an action to deny a debtor's discharge, the objecting party must prove each element under §727 by a preponderance of the evidence. *Allred v. Vilhauer (In re Vilhauer)*, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011) (citation omitted); Fed. R. Bank. P. 4005.

Section 727(a)(4)(A) provides, in pertinent part, that "[t]he court shall grant the debtor a discharge, unless. . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. §727(a)(4)(A). The bankruptcy court stated, and we agree, that to establish a false oath under §727(a)(4)(A), the Bank was required to prove that "(1) Debtor made a statement under oath; (2) the statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related

materially to the Debtor's bankruptcy case." *In re Juehring*, 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005)); *see also* Fed. R. Bankr. P. 4005.

The false statement must be "both material and made with intent." *Korte*, 262 B.R. at 474. Proof of intent can be made by circumstantial evidence and a statement made with reckless indifference to the truth is treated as if it is intentionally false. *Id*.

Ample evidence supported the bankruptcy court's determination that the Debtor failed to disclose in his Schedules and Statements and failed to satisfactorily explain the omissions of his livestock business and the gross income from it, over $25,000 of income in 2007, the transfers of the two ATVs, the Bobcat and the tractor, and the co-ownership with his wife of the Ford Explorer.

The Debtor maintains that his answers were not false based on his interpretation of the questions and that the bankruptcy court erred when it found that he possessed the requisite knowledge and intent under §727(a)(4). He argues that he did not understand what to disclose on his Schedules and Statements, but he tried his best and he disclosed everything to the trustee. He provides several arguments and explanations as to why he believes his reading of the questions is accurate and he continues to maintain that the disclosures in his Schedules and Statements were truthful and complete. The Debtor also appears to believe that he provided "completely understandable" explanations regarding omissions from his Schedules and Statements and that any omissions were merely mistakes. In addition, he submits that any omissions were immaterial.

The record supports the bankruptcy court's decision that the Debtor made false statements under oath. The Debtor argues that the bankruptcy court erred by finding that any omissions by the Debtor were made knowingly and intentionally because there was allegedly nothing in the record to support this determination. We disagree. The bankruptcy court determined that the Debtor possessed the requisite knowledge and intent by reviewing the evidence and the circumstances as a whole, and by

judging the Debtor's credibility. The bankruptcy court's decision was plausible in light of the record as a whole. *See Anderson*, 470 U.S. at 573-74 (where trial court's account is plausible, appellate court may not reverse even if it would have weighed the evidence differently). It considered the omissions and the reasons given by the Debtor for failing to disclose and determined that the Debtor's explanations were "not compelling in establishing innocent intent."

The bankruptcy court noted the Debtor's experiences in the business world and posited that the Debtor selectively understood certain concepts and "split hairs" in his explanations, such as his attempt to label his livestock business as a "hobby farm" or a farming business, rather than as a "business." It noted that some of the reasons given by the Debtor are simply not the law, such as his argument that his failure to disclose gross income from his livestock business is excused by the fact that his operation did not generate profit, and that others were incomprehensible. The Debtor has not articulated how the facts fail to support the bankruptcy court's decision.

Moreover, the Debtor's alleged failure to understand the information requested on the bankruptcy Schedules and Statements does not provide grounds to withhold information about his business. There is no doubt that a debtor who runs an enterprise with sales as large as those of the Debtor's hog operation must disclose in bankruptcy everything he knows about that business. The Debtor effectively asks us to adopt a subjective standard that would allow each individual debtor to make his or her own individual determination of what is meant by the questions on the Schedules and Statements and make disclosures accordingly. Such a subjective standard for disclosure is simply not the law. The effectiveness of the bankruptcy system depends on the Debtor's complete candor, and it is not the job of the trustee or creditor to search for information about the Debtor that should be readily disclosed in his bankruptcy Schedules and Statements. *See Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992) ("The petition, including schedules and statements, must be accurate

and reliable, without the necessity of digging out and conducting independent examinations to get the facts.") (interior quotation marks omitted) (citations omitted).

The Debtor's omissions were material. "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam) (quoted in *Mertz*, 955 F.2d at 598 and *Palatine Nat'l Bank of Palentine, Ill. v. Olson* (*In re Olson)*, 916 F.2d 481, 484 (8th Cir. 1990)). The value of the undisclosed asset does not determine whether the subject matter of the false oath is material and failure to disclose even an asset with minimal value may be material. *See Olson*, 916 F.2d at 484. We agree with the bankruptcy court that even if discovery of the Debtor's property interests results in no recovery for his estate, the omissions here were directly related to the Debtor's business and his assets, defining them as material for the purposes of §727(a)(4)(A).

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED.

-----