# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1522

_____

In re:  Bruce Peter Bren, and Barbara A.  *
Bren, as surety for Bruce Bren Homes,  *
Inc.,  *
  *
  *
       Debtor,  *
------------------------  *
  *   Appeal from the United States
Michael F. Jordan,  *   Bankruptcy Appellate Panel
  *   for the Eighth Circuit.
       Appellee,  *
  *     [UNPUBLISHED]
     v.  *
  *
Bruce Peter Bren; Barbara A. Bren,  *
as surety for Bruce Bren Homes, Inc.,  *
  *
       Appellants.  *

_____

Submitted:  November 15, 2004
Filed:  January 27, 2005

_____

Before SMITH, LAY, and BENTON, Circuit Judges.

_____

PER CURIAM.

Bruce and Barbara Bren ("Debtors" or "Brens") were equal and sole shareholders of a closely-held corporation, Bruce Bren Homes, Inc.  Bruce was the president of the corporation, which constructed luxury homes and townhouses from

1979 until December 2001.  In December, the Brens filed a joint bankruptcy petition under Chapter 7 ("petition").

Michael Jordan signed a residential building contract with Bruce Bren Homes, Inc., in September 2000.  Pursuant to the contract, Jordan paid the corporation $750,000 as an initial deposit.  Jordan later terminated the contract over an alleged failure of performance.  After the Brens filed their petition, Jordan, who had a substantial claim for unfinished work, challenged the dischargeability of certain debts and objected to the Debtors' discharge.

The sole issue at the bankruptcy trial was whether the Brens should be denied a discharge for knowingly and fraudulently making a false oath or account in, or in connection with, the case pursuant to 11 U.S.C. § 727(a)(4)(A).[1]  A false oath bars discharge in bankruptcy if it is both material and made with an intent to defraud.  *See Korte v. Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001).  "Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false."  *Id.* (internal quotations and citations omitted).  The materiality threshold is low; even a fairly modest asset is material because it need only "bear[] a relationship to the bankrupt's business transactions or estate, or concern[] the discovery of assets, . . . or the existence and disposition of his property."  *See Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992) (internal citations omitted).

---

[1] 11 U.S.C. § 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge, unless–

(4) the debtor knowingly and fraudulently, in or in connection with the case–

(A) made a false oath or account . . . .

The United States Bankruptcy Court for the District of Minnesota found that the Brens' Statement of Facts, Summary and Schedules, which was filed with their petition, contained multiple falsehoods.[2] The following nine were material:

- The Brens declared under penalty of perjury that they read the Statement of Facts, Summary and Schedules, and that the information therein was true and correct, when they in fact did not read these items. *See* TT at 10, 14, 69.

- The Brens owned an interest in the Golden Eagle Golf Properties, LLP, from which they received distributions, but did not list the interest on their schedules. *See* TT at 22-30.

- The Brens failed to disclose payment of $24,000 to Golden Eagle Golf Properties, LLP, made within twelve months pre-petition. *See* TT at 31-36.

- The Brens failed to disclose ownership of several assets, including a generator, airplane lift, three boat lifts, a golf cart, and

---

[2]The original Complaint alleged five undisclosed items in the Brens' petition. *See* Complaint ¶ 30 at 4. As litigation progressed, it turned out that only one of the original five allegations was accurate. However, more undisclosed assets and transfers were discovered during hearings and trial. The undisclosed items not originally listed in the Complaint were offered into evidence and admitted by the trial court. *See, e.g.,* Trial Transcript dated April 1, 2003 ("TT"), at 31. After trial, the judge solicited from Jordan a comprehensive list containing all alleged false oaths or omissions that either or both of the Brens committed. The Brens received an opportunity to reply. *See* TT at 75-76. As such, all of the omissions considered by the trial court and Bankruptcy Appellate Panel (BAP) were appropriately part of this litigation.

In light of this record, we feel compelled to mention that the Brens' claim (asserted in their brief) that "Judge Kressel found only four instances of omissions in the schedules of assets or transfers that were both false and material" to be misleading.

cabin contents prior to January 2003. *See* TT at 36-39; Mem. Order at 5.

- The Brens did not disclose the sale of about thirty firearms within a year pre-petition. *See* TT at 39-40.

- The Brens failed to disclose payment, made within six months pre-petition, of approximately $165,000 from personal funds to creditors of Bruce Bren Homes, Inc. *See* TT at 42.

- The Brens did not list that they voluntarily agreed to shorten the usual six-month redemption period prior to foreclosure on their lake home property, in return for personal releases and the right of possession after foreclosure. *See* TT at 43-45.

- The Brens did not disclose that they retained possession of a sold airplane. *See* Mem. Order at 6.

- The Brens also did not disclose that they retained possession of a Mazda B2000 truck owned by Bruce Bren Homes, Inc. *Id.*

*See also* Mem. Order at 4-8; Bankruptcy Appellate Panel (BAP) Opinion at 8-9.

Despite the omissions, the bankruptcy trial court found the Brens lacked an intent to defraud. *See* Mem. Order at 9. The bankruptcy court noted that the Brens' inattention to accuracy was "cavalier" and their false oaths were upsetting, but it also found that (a) the Brens' "affairs were very complicated," (b) "the schedules were, in the main, accurate," and (c) "the debtors made no attempts to equivocate or hide these errors once they were called to their attention." *Id.* Jordan appealed this ruling. The BAP reversed and remanded the case, holding that the trial court's finding of a lack of fraudulent intent was clearly erroneous. *See* BAP Opinion at 9. The Brens appealed.

This court reviews the bankruptcy trial court's findings of fact for clear error. *See Moon v. Anderson (In re Hixon)*, 387 F.3d 695, 700 (8th Cir. 2004). We reverse the BAP's decision in part and affirm in part, holding that the trial court's finding of a lack of fraudulent intent was clearly erroneous only as to Bruce Bren. We agree with the bankruptcy trial court that Barbara Bren lacked the requisite intent to defraud.

This panel would not deny discharge *solely* because the Brens initially declared that they had inspected their petition when in fact they did not. "[C]ourts are often understanding of a single omission or error resulting from innocent mistake." BAP Opinion at 6. However, it was surprising to learn that the Brens (especially Bruce Bren) did not take it upon themselves to inspect the petition after they received notice that others contested the accuracy of their disclosures. *See* TT at 70; *Mosley v. Sims (In re Sims),* 148 B.R. 553, 557 (E.D. Ark. 1992) (stating that Sims's assertion that he merely "glanced over" the petition but "didn't really understand it" constituted proof of a "cavalier and reckless disregard for truth which is inconsistent with the relief to be afforded the honest debtor" and emphasizing that "the Bankruptcy Code requires more than a 'glance over' in reporting assets and transactions"). The Brens also never utilized the option of amending their petition.

The sizeable nature of the Brens' omissions was troubling and suggested recklessness. For instance, the Brens' failure to report retained possession of an airplane, after it had been sold, was a substantial oversight. Also disturbing was the Brens' failure to surrender a Mazda B2000 truck (which was owned by the corporation) to the corporate trustee; their failure to report a payment of $24,000 to Golden Eagle Golf Properties, LLP – a partnership in which they owned an interest, yet failed to report; and their failure to disclose a $165,287.92 payment from personal funds to creditors of Bruce Bren Homes, Inc. These assets and transfers clearly "bear a relationship" to the liquidation process. This court remains mindful of the bankruptcy court's observation that the Brens' affairs were quite complex, but this

is true of most multi-million dollar corporations, and the Brens have not pointed to any legal sources stating that the complexity of one's financial affairs is a basis for leniency under the bankruptcy laws.

In the case of Bruce Bren, we are unpersuaded by the contention that he is an "unsophisticated" person and therefore had no idea what was going on in the petition. Our review of the trial transcripts revealed that Bruce Bren controlled the finances, yet was rather obstinate in his desire to remain ignorant about, and in his unwillingness to sort through, the admittedly laborious and confusing financial details. Indeed, much of his testimony reveals that he did not know whether significant assets or transfers were reported; or revealed that he would initially assert his belief that his petition was correct and then, after further questioning, would admit that a particular asset was not actually disclosed therein. *See* TT at 10-15, 29-30, 31-35, 43-46. It is reckless – perhaps even willful – to persist in such a high degree of ignorance about one's financial affairs during and after bankruptcy. *See Korte*, 262 B.R. at 474 (noting that "statements made with reckless indifference to the truth are regarded as intentionally false") (citations omitted); *Camacho v. Martin (In re Martin)*, 88 B. R. 319, 324 (D. Co. 1988) (stating that a "reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may give rise to the level of fraudulent intent necessary to bar a discharge"); *id.* at 325 (describing the debtor as either fully aware of the "seriousness of the Financial Statements, or [] reckless in failing to comprehend their import . . .").

On the other hand, it was undisputed that Barbara Bren exercised no role in the financial affairs of the business aside from signing checks. *See* TT at 7. She has remained equally distant from the bankruptcy petition process. As with Bruce, we question Barbara Bren's continued pursuit of ignorance in her own financial affairs, even after filing for bankruptcy. However, the record shows that Barbara came forward of her own accord with information about a modest inheritance that she had

failed to report previously; this information did not have to be dragged into the light of day through a court hearing. These facts constitute "strong evidence that there was no fraudulent intent" on Barbara Bren's part. *See Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1295 (10th Cir. 1997).

The decision of the BAP is REVERSED in part and AFFIRMED in part.

SMITH, Circuit Judge, concurring in part and dissenting in part.

While I agree with the majority that Bruce Bren's intent was fraudulent, I cannot agree that there was "strong evidence" that Barbara Bren lacked fraudulent intent. "Although a single omission is generally insufficient to support an objection to discharge, a series of omissions may create a pattern which demonstrates the debtor's reckless disregard for the truth." *In re Sadler*, 282 B.R. 254, 264 (Bankr. M.D. Fla. 2002) (citing *In re Phillips*, 187 B.R. 363, 369 (Bankr. M.D. Fla. 1995)). The majority correctly determined that "[t]he sizable nature of the Brens' omissions was troubling and suggested recklessness." However, despite these omissions and co-ownership of all assets, the majority holds that Bruce Bren was reckless while absolving Barbara Bren from her reckless behavior. The majority concludes that Barbara Bren's intent was not fraudulent because she "exercised no role in the financial affairs of the business aside from signing checks" and was "equally distant from the bankruptcy process." I disagree.

The majority discounts Barbara Bren's equally "cavalier" attitude toward the accuracy of the bankruptcy petition. In fact, Barbara Bren neither read the bankruptcy petition or schedules, nor did she make any attempt to correct them. Barbara Bren signed her bankruptcy petition under oath. "Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt." *Diorio v. Kreisler-Borg Construction Co.*, 407 F.2d 1330, 1331 (2d Cir. 1969) (citation omitted). Under the majority's holding, Barbara Bren's oath is virtually

meaningless. We have repeatedly said, "[t]he subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, *or concerns the discovery of assets, business dealings, or the existence and disposition of [her] property*." *In re Olson*, 916 F.2d 481, 484 (8th Cir. 1990) (emphasis added) (citing *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam)); *see also In re Mertz*, 955 F.2d 596, 598 (8th Cir. 1992). A clear relationship exists between Barbara Bren's false oath and discovery of her business assets and dealings. The subject matter of her false oath was material and she should also be denied a discharge.

For these reasons, I dissent in part from the majority's holding.

_____