# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

**Nos. 09-6070/6071**

———

| | | |
|---|---|---|
| In re:  Keith Burton Thomas; Patricia Ann Thomas, | * * * | |
| Debtors. | * * | |
| Bank of Bennington, | * * | Appeals from the United States, Bankruptcy Court for the |
| Plaintiff – Appellee, – Cross-Appellant, | * * * | District of Nebraska |
| v. | * * | |
| Keith Burton Thomas; Patricia Ann Thomas, | * * * | |
| Defendants – Appellants, – Cross-Appellees. | * * * | |

———

Submitted: May 28, 2010
Filed: June 22, 2010

———

Before KRESSEL, Chief Judge, FEDERMAN and VENTERS, Bankruptcy Judges.

———

KRESSEL, Chief Judge.

The bankruptcy court[1] sustained the Bank of Bennington's objection to debtor Keith Thomas's discharge and overruled its objection to debtor Patricia Thomas's discharge. It also determined that Keith Thomas's debts to the bank were dischargeable. Everyone appealed. We affirm the bankruptcy court's order denying Keith Thomas's discharge and granting Patricia Thomas's discharge. We dismiss the balance of the bank's appeal as moot and Patricia Thomas's appeal for lack of standing.

## FACTS

Keith and Patricia Thomas owned several corporations along with their son, Timothy Thomas, and his wife. The Thomas entities included: Four T Corporation; Sceptre Storage, L.L.C.; Four T Companies, Inc.; and Papiotrade, a wholesale distributor of tobacco products. Keith and Tim were in control of all of the Thomas entities, but their wives had very little involvement. On December 12, 2002, the two couples and some of the Thomas entities executed a promissory note to the Bank of Bennington in the original principal amount of $4,000,000, and received a line of credit on a borrowing base that included inventory, accounts receivable, and other collateral. In order to access the line of credit, Papiotrade was required to submit monthly borrowing base certificates to the bank. On March 27, 2004, Four T Companies, Inc. executed a promissory note for $400,000. The note was guaranteed by the Thomas entities and by the debtors personally. Papiotrade submitted monthly borrowing base certificates to the bank. The certificates were generally submitted by CFO Dan Kraft, but were usually[2] reviewed and approved by Keith and Tim.

---

[1] The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

[2] The bank disputes this characterization of the pretrial statement. The bank submitted as uncontroverted that "These borrowing base certificates were reviewed and approved by Keith Thomas and Tim Thomas prior to submission to the Bank." However, in the pretrial statement, the debtors responded, "Debtors agree with the Plaintiff's Uncontroverted Fact (f), except that Keith Thomas and

The borrowing base certificates showed the value of inventory, state cigarette tax stamps, accounts receivable, cash, and other miscellaneous assets. The bank relied on the accuracy of the certificates in reviewing the loan and deciding whether or not to allow the companies to continue to borrow. In late 2004, bank officers met with Keith and Tim Thomas and told them they would need to balance their borrowing base. The bank offset $176,000 from Papiotrade's bank account, but the borrowing base still was not sufficient. In January of 2005, bank officers told Keith and Tim that if the end-of-January certificate did not show sufficient assets, the bank would shut down the lending relationship.

In response to the bank's warning, Tim initially tried to make more sales to increase accounts receivable. By the close of business on January 31, 2005, the assets were still insufficient. Tim continued to "work on sales" throughout the evening. The next morning, Papiotrade prepared a new borrowing base certificate based on the new invoices and sales from the night before, which showed that the assets were now sufficient to meet the requirements of the loan. The sales invoices from the January 31 evening sales were never sent to the alleged purchasers. The borrowing base certificates submitted through March reflected those sales. No one from Papiotrade ever informed the bank that the sales and accounts receivable were not actual sales or accounts receivable. Eventually, real sales increased, and all of the January 31 invoices were backed out of the accounting system between mid-February and the end of April 2005. Papiotrade and the other companies later closed. After the liquidation of the bank's collateral, a significant amount of the debt remains.

Keith and Patricia filed a voluntary chapter 7 petition on November 22, 2006. Keith and Patricia failed to disclose on their schedules or statement of financial affairs: 1) a $397,000 tax refund they had received within the year prior to the filing of their petition; 2) a loan (and its repayment) in the amount of

Timothy Thomas did not always review the monthly borrowing base certificates prior to their submission to the bank."

3

$150,000 from the wife of Keith's relative that occurred within two years of the petition; 3) state tax refunds of $56,000; 4) $500,000 in settlement payments received within two years of filing the petition; and 5) $90,000 in payments from Papiotrade received as income within two years of the petition. At the § 341 meeting, the bank's counsel brought the first three omissions to the attention of the debtors, who shortly thereafter amended their statement to include the refunds, loan and repayment. Keith still did not disclose the fourth or fifth omissions.

The bank filed an adversary proceeding against Keith and Patricia. The bank sought to except from Keith's discharge his debts arising out of the notes and guarantees made in connection with his business, under 11 U.S.C. § 523(a)(2), (4) and (6), based on Keith's alleged involvement in submitting the fraudulent borrowing base certificates to the bank after Papiotrade encountered financial difficulties in 2004. The bank also sought to deny Keith and Patricia discharges under 11 U.S.C. § 727.

The bankruptcy court ruled against the bank on its § 523(a) claims. The bankruptcy court found that Tim, but not Keith, was involved in creating the fraudulent sales and invoices, ordering the collection department to refrain from attempting collection and directing the accounts receivable to be reversed after the CFO suggested that an audit would soon occur and the auditors would find the erroneous accounts receivable.

The bankruptcy court denied Keith's discharge on the basis of his numerous omissions, but did not deny Patricia's discharge. The court found (and Keith does not dispute) that Keith knew of the existence of all of the refunds and payments that he omitted from his petitions and schedules but chose not to disclose them. The court found that there was insufficient evidence of Patricia's knowledge of the omissions.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error. *First Nat'l Bank of Olathe, Kansas v. Pontow,* 111 F.3d 604, 609 (8th Cir. 1997); *Merchs. Nat'l Bank of Winona v. Moen (In re Moen),* 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting *U.S. v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Whether the bank proved an exception to discharge under 11 U.S.C. § 727 is a question of law, which we review de novo. *Block v. Moss (In re Moss)*, 266 B.R. 408, 413 (B.A.P. 8th Cir. 2001).

## ANALYSIS

### I.    The court did not err in denying Keith's discharge under § 727(a)(4)(A).

Section 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless ... the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." The court found that Keith 1) made statements under oath on his petition and schedules and at his 341 meeting; 2) the statements were false because he failed to list two tax refunds, a large settlement, and $90,000 from Papiotrade; 3) he knew the statements were false because he knew of the refunds, settlement and $90,000 but decided not to include them; 4) he made the statements with fraudulent intent, which was implied from the recklessness of the sizable omissions; and 5) the statements were material to the bankruptcy case because they concerned the discovery of assets or the existence and disposition of estate property.

Keith disputes the court's application of the fourth prong, intent. He argues that the court's denial of his discharge amounts to strict liability for his omissions, which he claims were honest mistakes that he corrected as soon as they were brought to his attention. Reckless disregard for the truth will support a finding of fraudulent intent for the purpose of denying a debtor his discharge under § 727(a)(4)(A). *Korte v. Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001) ("Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false."); *see also Jordan v. Bren (In re Bren)*, 122 Fed. Appx. 285, 286 (8th Cir. 2005) (unpublished) (citing *Korte*). Keith completely ignores the court's finding of reckless indifference to the truth, essentially arguing that his false statements were mitigated by his later actions to provide full information, and that the failure to include the $397,000 refund on the schedules was his attorney's fault.

On appeal, Keith argues that the bankruptcy court "ignored evidence" that mitigated his responsibility. We presume that the bankruptcy court reviewed all evidence presented to it and it specifically referred to Keith's evidence several times and simply found it unpersuasive. In any event, the bankruptcy court's findings were supported by the record and, except for the finding of intent, not disputed by Keith. Regarding the finding of intent, the court noted several omissions, which Keith does not dispute, and the court inferred intent from the recklessness and magnitude of the omissions. These omissions were serious enough to support the court's inference of fraudulent intent. The bankruptcy court's findings were not clearly erroneous.

## II. The bankruptcy court did not err in not denying Patricia's discharge under § 727(a)(4)(A).

The bank also objected to Patricia's discharge under § 727 based on the same omissions. The court found that there was "insufficient evidence with regard to Mrs. Thomas's knowledge and understanding of the dates on which certain

settlement monies were received and transferred and no evidence concerning her knowledge of the $90,000 that Keith Thomas received in several checks from Papiotrade in February and May of 2005."

The bank did very little to make a case against Patricia. It asked no questions of her at trial. The court found insufficient evidence of intent, and the bank has not pointed to anything in the record to support its position that the bankruptcy court erred in not denying Patricia's discharge. *See Jordan v. Bren (In re Bren)*, 122 Fed.Appx. 285 (8th Cir. 2005) (unpublished) (bankruptcy court did not have basis to deny wife's discharge based on omissions from the married couple's joint bankruptcy petition and schedules where wife was not involved in business's financial affairs and was ignorant of her own financial affairs). The bankruptcy court's findings as to Patricia are supported by the record and were not clearly erroneous.

### III.    The balance of the bank's appeal is moot.

Because we find that the bankruptcy court properly denied Keith's discharge, the dischargeability of its particular debt is moot. *See Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 352 (B.A.P. 8th Cir. 2000) ("Since the granting of an exception to discharge under § 523(a) is subsumed within a denial of general discharge under § 727(a), the cross-appeal is mooted by our disposition of the Debtors' appeal.") (citing *Vaughn v. Aboukhater (In re Aboukhater),* 165 B.R. 904, 912 (B.A.P. 9th Cir. 1994); *Columbia Farms Distrib., Inc. v. Maltais (In re Maltais),* 202 B.R. 807, 810 (Bankr. D. Mass. 1996); *Kellogg-Citizens Nat'l Bank of Green Bay v. DeBruin (In re DeBruin),* 144 B.R. 90, 94 (Bankr. E.D. Wis. 1992); *Watson v. City Nat'l Bank (In re Watson),* 78 B.R. 267, 271 (Bankr. C.D. Cal. 1987)). Since Keith is not receiving a discharge, it is obvious the question of whether a debt is excepted from his discharge is irrelevant. At oral argument, the bank expressed concern that if Keith filed another case, it would be put in the position of having to prove its exception to discharge. However, the bank's debt,

together with the debts of all current creditors, would not be discharged in any subsequent case.  11 U.S.C. § 523(a)(10).

**IV.    Patricia lacks standing to appeal.**

Although Patricia joined in the appeal filed by Keith, she was in no way aggrieved by the bankruptcy court's order or judgment and thus lacks standing to appeal.

## CONCLUSION

We affirm the bankruptcy court's decision to deny Keith's discharge and to grant Patricia hers.  We dismiss as moot the bank's appeal of the bankruptcy court's decision determining its debts to be dischargeable.  Lastly, we dismiss Patricia's appeal for lack of standing.

_____