# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 11-6038

_____

In re:  Gilbert Calvin Vilhauer;     \*
  Kay Lynn Vilhauer    \*
   \*
  Debtors    \*
   \*
Forrest C. Allred, Trustee    \*   Appeal from the United States
   \*   Bankruptcy Court for the
  Plaintiff - Appellee    \*   District of South Dakota
   \*
     v.    \*
   \*
Gilbert Calvin Vilhauer;    \*
  Kay Lynn Vilhauer    \*
   \*
  Defendants - Appellants    \*

_____

Submitted:  August 24, 2011
Filed:  October 11, 2011

_____

Before KRESSEL, Chief Judge, SCHERMER, and FEDERMAN, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

Debtors Gilbert Calvin Vilhauer and Kay Lynn Vilhauer appeal from the Judgment of the Bankruptcy Court[1] denying their discharge pursuant to 11 U.S.C. § 727(a)(5). For the reasons that follow, the Bankruptcy Court's Judgment is AFFIRMED.

## FACTUAL BACKGROUND

Debtors Gilbert and Kay Vilhauer owned and operated a farm and ranch near Hosmer, South Dakota, where they raised cattle and fed cattle for others. They also owned and operated a corporation known as Vilhauer Sales, Incorporated. They filed a voluntary Chapter 11 bankruptcy petition on January 4, 2010.

On January 14, 2010, Plains Commerce Bank, who held a security interest in the Debtors' real and personal property, including livestock, moved for relief from the automatic stay. By letter dated January 21, 2010, in connection with the motion for relief from stay, the Debtors' attorney advised the Court regarding the condition and welfare of the livestock, and represented that there were 1,134 head of cattle located on the Vilhauer farm at that time.[2] Counsel further represented that:

> Gilbert Vilhauer has assured me that all of the livestock are receiving the best of care. I personally visited the Vilhauer farm last week along with representatives of Plains Commerce Bank. There is plenty of feed and water on hand to see the livestock through the remainder of the winter. All of the livestock also have excellent protection from winter

---

[1] The Honorable Charles L. Nail, Jr., United States Bankruptcy Judge for the District of South Dakota.

[2] Similarly, attached to the Exhibit List for the hearing on the motion for relief from stay, the Debtors included a chart dated January 14, 2010, and signed January 22, 2010, showing 1,134 head of cattle. It would appear from the record that some of the 1,134 head of cattle located on the farm was owned by others.

weather, including protection from the possible snow storm forecast for this weekend.

On February 1, 2010, the parties filed a Stipulation on the motion for relief from stay which, *inter alia*, called for liquidation of the livestock and certain other collateral and, further, required the Debtors to file a Plan on or before February 9, 2010. The Court approved the Stipulation on February 2, 2010. After the Debtors failed to file a Plan by the February 9 deadline, the Bankruptcy Court lifted the stay on February 18, 2010. Apparently, the Bank liquidated all of the cattle located on the Debtors' farm, totaling 1,017 head, by March 10, 2010.[3]

On April 6, 2010, at the request of the United States Trustee, and with the Debtors' subsequent consent, the Bankruptcy Court converted the case to Chapter 7.

On July 7, 2010, the Chapter 7 Trustee filed an adversary proceeding seeking denial of the Debtors' discharge under § 727.[4] As relevant here, he asserted that 117 head of cattle, constituting approximately 10% of the Debtors' herd, were unaccounted for, and that the Debtors had failed to satisfactorily explain the shortage.

---

[3] It is not clear from the record, but it would appear that the Bank was permitted to liquidate not only the cattle owned by the Debtors themselves, but also the cattle which was owned by a third party, Producers Livestock, which had been located at the Debtors' farm. As discussed more fully below, however, the Debtors do not dispute that there was a discrepancy of 117 head between the 1,134 they said they held in January and the 1,017 sold by the bank in March. The Bank's representative testified at trial that, as between the Bank and Producers Livestock, the Bank absorbed all of that shortfall.

[4] On July 2, 2010, Plains Commerce Bank also filed an adversary complaint against the Debtors, seeking denial of the Debtors' discharge under § 727(c), (d), and (e), and asserting nondischargeability of its debt under § 523(a)(2)(A). That adversary proceeding has essentially been placed on hold pending final judgment in this adversary proceeding.

He asserted that the Debtors' discharge should thus be denied under § 727(e)(5), as well as § 727(a)(2), alleging that the Debtors transferred, removed, destroyed, mutilated or concealed the missing cattle with the intent to hinder, delay, or defraud creditors.

At the conclusion of the trial on the matter, the Bankruptcy Court ruled in favor of the Trustee and denied the Debtors' discharge under § 727(a)(5). The Debtors appeal.

## STANDARD OF REVIEW

We review the Bankruptcy Court's factual findings for clear error and its conclusions of law *de novo*.[5] The Debtors do not assert that the Bankruptcy Court erred in its application of § 727(a)(5); rather, they assert that the Court's factual findings were clearly erroneous. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed."[6] If the Bankruptcy Court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse merely because we might have decided the issue differently.[7] "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[8]

---

[5] *Floret, L.L.C. v. Sendecky* (*In re Sendecky*), 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002).

[6] *Id.*; *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

[7] *Anderson v. Bessemer City*, 470 U.S. at 573-74, 105 S.Ct. at 1511.

[8] *Id.*

**DISCUSSION**

Section 727(a)(5) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."[9] As the Debtors suggest, denial of a debtor's discharge is a harsh penalty and, accordingly, § 727 is to be strictly construed in favor of the debtor.[10] In order to prevail, the Trustee, as the objecting party, must prove each element of § 727 by a preponderance of the evidence.[11] If the objecting party demonstrates a deficiency of assets, the burden shifts to the debtor to explain the loss.[12]

The Debtors do not assert on appeal that the Bankruptcy Court erred finding that 117 animals were lost between mid-January and March 10, 2010. And, they concede that, since the Trustee met his burden of demonstrating that loss of property, the burden shifted to them to provide an adequate explanation of the loss.

"If the explanation is too vague, indefinite, or unsatisfactory then the debtor is not entitled to a discharge. The explanation given by the debtor must be definite enough to convince the trial judge that assets are not missing."[13] "An important component in ascertaining the reasonableness of any explanation is its capacity for verification; that is, is the explanation sufficient to enable either the trustee or a

---

[9] 11 U.S.C. § 727(a)(5).

[10] *In re Sendecky*, 283 B.R. at 763.

[11] *Id.*

[12] *Id.* at 766.

[13] *Id.* (citations and internal quotation marks omitted).

creditor to properly investigate the circumstances surrounding the loss or deficiency."[14] Unsubstantiated, uncorroborated and undocumented testimony from the debtor is not likely sufficient.[15]

The Debtors assert that the 117 animals died due to extreme weather in the area in the winter months of early 2010, and that all of the carcasses were burned in a burn pit on the farm by July 1, 2010. In support of that assertion, Gilbert Vilhauer testified that, after the thaw in 2010, he saw many carcasses on and around the property. He produced photographs of 103 dead animals at trial.[16] He asserts that the photos constitute clear and credible evidence corroborating the explanation of the loss of at least 103 of the cattle. Another witness, Dewayne Siebrasse, who arranged the feed rations to feed the Debtors' livestock in the spring of 2010, also testified that he witnessed significant numbers of cattle deaths that year, both at the Debtors' property and at other farms in the area. He also said he saw dead carcasses on the Debtors' property, although he did not count them.

The Trustee produced contrary evidence. As part of the discovery relating to the adversary proceeding, the burn pit was exhumed on May 11, 2011, using a large track hoe digger. Dr. Greg Adolph, a licensed veterinarian, testified at trial that he was personally present and supervised the exhumation process. He testified that they dug down to virgin soil at the bottom of the pit and that all of the carcasses remaining in the pit were removed and inspected by him. He further testified that there were 56

---

[14] *Baker v. Reed* (*In re Reed*), 310 B.R. 363, 370 (Bankr. N.D. Ohio 2004).

[15] *See Schieffler v. Beshears* (*In re Beshears*), 196 B.R. 468, 473 (Bankr. E.D. Ark. 1996).

[16] Although the parties submitted a transcript of the trial as part of this appeal, they did not furnish copies of the exhibits admitted at trial. Consequently, we were unable to view the photographic and other documentary evidence on appeal.

carcasses in the pit at the time of exhumation, and that, based on the level of decomposition at that time, roughly seven of the 56 could possibly have been in the burn pit before July 1, 2010 – the rest must have been placed in the pit after July 1, 2010. He testified that there was no evidence of burning, other than of household waste. He further testified that, even though it is easier to incinerate cattle whose carcasses have been decomposed, it is difficult to fully incinerate cattle remains in any condition, explaining that some bones will remain after incineration.

Dr. Adolph also testified that, given the conditions of the farm and weather in the winter of early 2010, a normal death loss rate over 60 days would be one to two percent of adult animals, whereas the Debtors alleged they sustained a loss of over 10% in only 48 days.

In ruling in favor of the Trustee, the Bankruptcy Court specifically found Dr. Adolph's testimony about the number of carcasses burned in the pit to be credible. The Court further specifically found the photographs to be unpersuasive because there was no independent corroboration as to whose cattle they were, when they died, where they were located when the photos were taken, or when the photographs themselves were taken. In addition, although Mr. Siebrasse's testified he saw some dead cows, that testimony did not corroborate the number of dead cows the Debtors asserted there were.

This case boils down to credibility. On appeal, we do not sit in judgment of the credibility or demeanor of witnesses and it is not our role to second guess a trial court's decision to credit the testimony of one side's witness and discredit the testimony of witnesses proffered by another.[17] The Debtors presented testimony and evidence that over 100 head of cattle had died and were burned in the pit. The

---

[17] *See Dullea Land Co. v. Ideal Ag Corp* (*In re Dullea Land Co.*), 269 B.R. 33, 36 (B.A.P. 8th Cir. 2001).

Trustee presented evidence that, while some cattle may have been burned in the pit, the number was nowhere near what the Debtors asserted. In the end, the Bankruptcy Court found the Trustee's evidence to be more credible and articulated its reasons for doing so. As stated above, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[18] Consequently, we hold that the Bankruptcy Court did not clearly err in finding that the Debtors failed to adequately explain the loss of cattle.

Accordingly, the Bankruptcy Court's Judgment denying the Debtors' discharge under 11 U.S.C. § 727(a)(5) is AFFIRMED.

---

[18] Anderson, 470 U.S. at 574