# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 12-6016

---

| | |
|---|---|
| In re:         * | |
|         * | |
| In re:  Dennis J. Charles,         * | |
| Formerly doing business as Concrete         * | |
| Specialists, Inc., Formerly doing business         * | |
| as D&J Concrete,         * | |
|         * | |
|         Debtor.         * | |
|         * | |
| Kip M. Kaler, as Bankruptcy Trustee         * | |
| for Dennis J. Charles,         * | Appeal from the |
|         * | United States |
|         Plaintiff-Appellee,         * | Bankruptcy Court for the |
|         * | District of North Dakota |
|         v.         * | |
|         * | |
| Dennis J. Charles,         * | |
|         * | |
|         Defendant - Appellant.         * | |

---

Submitted: June 12, 2012
Filed: July 16, 2012

---

Before KRESSEL, Chief Judge, SCHERMER and VENTERS, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

The Debtor, Dennis J. Charles (the "Debtor"), appeals from the ruling of the bankruptcy court[1] denying his discharge pursuant to 11 U.S.C. §727(a)(2)(B) and (a)(4)(A). We have jurisdiction over this appeal from the final judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## ISSUE

The issue on appeal is whether the bankruptcy court properly denied the Debtor's discharge under §727(a)(4)(A).

## BACKGROUND

On August 17, 2010, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor's Schedules and Statement of Financial Affairs were signed under oath. On his Schedule A, the Debtor listed the value of his house as $225,000, stating that there were secured claims against the house in the amount of $258,000. According to the Debtor's Schedule D, the debt secured by his house was divided into: (1) $224,000 secured by a first mortgage; and (2) $34,000 secured by a second mortgage. On October 20, 2011, the Debtor filed an Amended Schedule D, this time stating that the debt secured by his house was $9,636.58 less than the amount of the debt he had originally listed.

The Debtor's Schedule B indicated that the Debtor held a 50% stock ownership in Tru Wall Concrete, Inc. ("Tru Wall"), valued at $1.00. The Debtor also valued his 50% stock ownership in Tri-Star Properties, LLC ("Tri-Star") at $1.00 in his Schedule B.

---

[1] The Honorable Shon Hastings, United States Bankruptcy Judge for the District of North Dakota.

In January 2011, five months after filing his bankruptcy petition and his original Statement of Financial Affairs, the Debtor filed an amended Statement of Financial Affairs, for the first time disclosing: (1) $15,000 in dividends from Tru Wall in 2010; and (2) a substantial income from business entities.

On February 10, 2011, Kip M. Kaler, Chapter 7 trustee (the "Trustee") commenced an adversary proceeding against the Debtor, seeking denial of the Debtor's discharge under Bankruptcy Code §§727(a)(2)(B) and (a)(4)(A). With respect to the cause of action under §727(a)(4)(A), the Trustee alleged that certain non-disclosures by the Debtor constituted false oaths that would merit denial of the Debtor's discharge. The Trustee also alleged that the Debtor concealed property of the bankruptcy estate with the requisite intent for denial of the Debtor's discharge under §727(a)(2)(B). On September 29, 2011, the Bankruptcy Court held a trial on the complaint, and it ultimately entered judgment in favor of the Trustee and against the Debtor, denying the Debtor's discharge.

With respect to denial of the Debtor's discharge under §727(a)(4)(A), the false oaths alleged by the Trustee, and found to exist by the bankruptcy court, comprise four main categories: (1) undervaluation of the Debtor's interest in Tri-Star; (2) the undervaluation of the Debtor's interest in Tru Wall; (3) the undervaluation of the Debtor's house and the overstatement of the debt against it; and (4) the Debtor's omission of his income from the two years pre-petition and failure to disclose $15,000 in distributions from Tru Wall.[2] The bankruptcy court dedicated a

---

[2] On his Schedule C, the Debtor listed the value of his interest in Tri-Star and Tru Wall as $1.00 and the value of his house as $225,000. He claimed a $1.00 exemption in each asset. The bankruptcy court rejected an argument by the Debtor that the Trustee was estopped from challenging the Debtor's valuation of these assets in his adversary proceeding because the Trustee withdrew his objection to the Debtor's claimed exemptions, an objection that was made based on the Debtor's valuations of the assets. The Debtor did not raise the estoppel

significant portion of its opinion to analyzing whether the Debtor made a false oath with respect to the value of Tri-Star on his schedules. The court did not conclude its analysis, however, after determining that the Debtor had made a false oath under §727(a)(4)(A) when he listed his interest in Tri-Star at $1.00. Rather, the court analyzed the Debtor's undervaluation of his interests in Tru Wall and his house, and the overstatement of the debt against his house, as well as the Debtor's initial omission of his income and his distributions from Tru Wall, determining that the Trustee established a cause of action under § 727(a)(4)(A).

## STANDARD OF REVIEW

We review findings of fact for clear error and conclusions of law *de novo*. *Korte v. Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 469 (B.A.P. 8th Cir. 2001) (citations omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). We give due regard to the bankruptcy court's opportunity to judge the credibility of witnesses. Fed. R. Bankr. P. 8013.

## DISCUSSION

Denial of a discharge is a harsh remedy and, accordingly, the provisions under §727 of the Bankruptcy Code "are strictly construed in favor of the debtor." *See Korte*, 262 B.R. at 471 (quoting *Fox v. Schmidt (In re Schmidt)*, 71 B.R. 587, 589-90 (Bankr. D. Minn. 1987)). "Importantly, however, §727 was also included to prevent the debtor's abuse of the Bankruptcy Code." *Korte*, 262 B.R. at 471 (citation omitted). To prevail in an action to deny a debtor's discharge, the objecting party must prove each element under §727 by a preponderance of the evidence. *Allred v.*

issue on appeal and we consider it to be abandoned.

*Vilhauer (In re Vilhauer)*, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011) (citation omitted); Fed. R. Bank. P. 4005.

## 11 U.S.C. § 727(a)(4)(A)

Section 727(a)(4)(A) provides, in pertinent part, that "[t]he court shall grant the debtor a discharge, unless. . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. §727(a)(4)(A). The bankruptcy court correctly recognized that, to establish that the Debtor made a false oath under §727(a)(4)(A), the Trustee was required to prove that "the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Debtor's bankruptcy case." Lincoln Sav. Bank v. Freese (In re Freese), 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011) (citation omitted). The bankruptcy court also properly noted that the Trustee was required to "prove each element by a preponderance of the evidence." Vilhauer, 458 B.R. at 514. And the court did, in fact, require such proof by the Trustee.

Each of the fraudulently made false oaths found by the bankruptcy court: (1) undervaluation of the Debtor's interest in Tri-Star; (2) the undervaluation of the Debtor's interest in Tru Wall; (3) the undervaluation of the Debtor's house and the overstatement of the debt against it; and (4) the Debtor's omission of his income from the two years pre-petition and failure to disclose $15,000 in distributions from Tru Wall, was a representation made by the Debtor in his schedules or statements. It is well established that, because statements made by a debtor in his schedules and statements, and at his meeting of creditors, are signed under pains and penalties of perjury, they constitute "oaths" for the purposes of §727(a)(4)(A). *Korte,* 262 B.R. at 474. Moreover, we agree with the bankruptcy court's statement that "statements made with reckless indifference to the truth are regarded as intentionally false" and that "[f]raudulent intent may be established by circumstantial evidence." *See Id.* The

bankruptcy court found that the Debtor made false oaths with the requisite knowledge and intent under §727(a)(4)(A), and we cannot say that these findings were clearly erroneous.

We give "significant deference to the bankruptcy court as the finder of fact." *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 346 (B.A.P. 8th Cir. 2000). "If the [trial] court's account of its evidence is plausible in light of the record viewed in its entirety, the [appellate tribunal] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 346 (quoting *Anderson*, 407 U.S. at 573-74). The bankruptcy court aptly explained how the record supported the plausibility of its decision. We are not left with a "definite and firm conviction that a mistake has been committed." *See Anderson*, 407 U.S. at 573.

After reviewing the evidence and adjudging the credibility of witnesses, the bankruptcy court accepted the Trustee's position, therefore determining that the Debtor's evidence and explanations did not satisfactorily support the Debtor's position. It was based on these assessments that the bankruptcy court provided a detailed and extensive analysis, which we do not repeat in its entirety.

With respect to the Debtor's undervaluation of his interest in Tri-Star, the bankruptcy court weighed considerable evidence and testimony -- for example, testimony of the Debtor and his co-owner in Tri-Star (Chad Ohnstad), testimony from a representative of Tri-Star's lender, tax returns, and a buy-sell agreement to which the Debtor and Ohnstad were parties -- and found that they did not support the Debtor's arguments.

Unpersuasive to the bankruptcy court were the Debtor's contentions that the value of his interest in Tri-Star was nominal because it was limited by the buy-sell agreement and the fact that a purchaser of the Debtor's interest would become a co-owner with Ohnstad. The court analyzed various facts and found, after applying

marketability and minority ownership discounts, that the evidence supported a value of the Debtor's interest in Tri-Star that was significantly greater than the $1.00 stated by the Debtor. For example, the bankruptcy court found it important that in January 2009 the Debtor had paid $25,000 to purchase a 25% interest in Tri-Star, had certified just months later on a financial statement that the value of his interest was $63,000 and also that the Debtor knew that in the Spring of 2009, Tri-Star's property was appraised at $640,000. The bankruptcy court discounted as lacking in credibility the testimony of the Debtor and Ohnstad that the Debtor offered as support for his argument that the proceeds from a sale of Tri-Star's assets would barely be sufficient to meet its debt. The bankruptcy court's other assessments of the evidence and circumstances support its decision, such as the court's refusal to read an implied term into the buy-sell agreement that would require debt against Tri-Star's property to be subtracted from the purchase price for an interest in Tri-Star. And it was from the bankruptcy court's assessment of the record in its entirety that it decided that "at the very least, Debtor's valuation of his interest in Tri-Star at $1.00 was made with reckless indifference to the truth and that [the Debtor] had the requisite fraudulent intent."

To find that the Debtor made a false oath by listing of his interest in Tru Wall as worth $1.00, the bankruptcy court viewed the evidence as a whole and reached a decision that is supported by the record. The court disregarded the Debtor's claim that he valued Tru Wall at $1.00 because it ceased operating pre-petition, in favor of testimony by the Trustee and Ohnstad that Tru Wall did not cease its operations until more than four months post-petition. Analyzing and weighing other testimony and documentary evidence, the bankruptcy court disagreed with the Debtor's contention that Tru Wall's debts exceeded its assets on the petition date. The bankruptcy court made additional findings to support its determination of a false oath under §727(a)(4)(A), for instance, it noted that Tru Wall had made significant distributions to its equity holders the same year the bankruptcy petition was filed.

The balance of the bankruptcy court's determinations are also supported by the record. For instance, after reviewing the various bases submitted for valuing the Debtor's house, the bankruptcy court disregarded the Debtor's testimony and exhibits, in favor of a retrospective appraisal of the house and a written offer to purchase it. The court examined the evidence and noted that the Debtor's scheduled value of the house was not a "good faith value estimate" because the Debtor disregarded more credible and significantly higher options for the value, the Debtor claimed his valuation was based on an offer to purchase the house but the Debtor had not accepted the offer or provided a counteroffer, and "Debtor agreed with the Trustee's counsel on cross examination that this number did not reflect his opinion of the value of the house." With respect to the amount of the debt secured by the house, the bankruptcy court found unpersuasive in light of the circumstances the Debtor's contention that his misstatement of such amount was a mistake. The bankruptcy court outlined additional omissions from the Debtor's Statement of Financial Affairs that the Debtor claimed to be mistakes; stating that he offered no explanation for certain omissions he should have known when he originally filed this document.

Viewing many of the Debtor's omissions together, the bankruptcy court properly noted, reckless indifference to the truth may be found were there are multiple false statements made under oath. *Kaler v. Geller (In re Geller),* 314 B.R. 800, 807 (Bankr. D.N.D. 2007). The bankruptcy court stated that, based on its review of the evidence, it "concludes that Debtor's undervaluation of his house and his interest in Tru Wall, his erroneous disclosure of the debt against his house, and the multiple omissions on his Statement of Affairs rise to the level of reckless indifference to the truth." We do not second guess this assessment by the bankruptcy court.

The Debtor characterizes this matter as concerning a mere difference of opinion regarding the value of assets where the Debtor's valuation was made in good faith. For example, he assumes that the bankruptcy court found that the Debtor's valuations

were made with reckless indifference to the truth, solely based on the Debtor's opinion regarding value. But, as described above, the bankruptcy court found that the undervaluations of the Debtor's assets were made with the requisite level of intent based on its assessment of the evidence and the credibility of witnesses. The bankruptcy court's findings were not clearly erroneous.

"The threshold to materiality is fairly low: 'The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Sears*, 246 B.R. at 347 (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam) (additional citations omitted)). "An omission of a relatively modest asset will merit denial of discharge, if done with knowledge and fraudulent intent." *Sears*, 246 B.R. at 347 (citing *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992)). The Debtor's omissions were material because they were related to his business transactions, bankruptcy estate and assets.

According to the Debtor, the Debtor's disclosure of his interest in Tri-Star and Tru Wall at $1.00 "put the Trustee on notice that he should inquire further .. . [i]n other words, the Debtor's valuation invited further investigation by the Trustee." We disagree. By undervaluing his interests, the Debtor sent a message to the Trustee that there was no need to inquire further. Moreover, "[a]s §727(a)(4)(A) makes clear, 'the Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind.'" *Korte*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001) (quoting *Fokkena v. Tripp (In re Tripp)*, 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998)) (citation omitted). It is crucial to the effectiveness of the bankruptcy system that the Debtor proceed with complete candor. The Trustee should not be required to conduct his own investigation to discover the facts. *See Mertz*, 955 F.2d at 598 ("The petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts.")

(interior quotation marks omitted) (citations omitted).  The Debtor violated his obligation of "full and complete disclosure."

**11 U.S.C. § 727(a)(2)(B)**

Based on our decision that the bankruptcy court properly denied the Debtor's discharge under §727(a)(4)(A), we do not consider whether the Debtor's discharge should have been denied under §727(a)(2)(B).  *Stabler v. Beyers (In re Stabler)*, 418 B.R. 764, 766 n.2 (B.A.P. 8th Cir. 2009)("[t]he Panel may affirm on any basis supported by the record")(citation omitted)).

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED.

---