# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 15-6026

_____

In re: Norma J. Cecil, doing business as Northside

*Debtor*

------------------------------

Home Service Oil Company

*Plaintiff - Appellee*

v.

Norma J. Cecil

*Defendant - Appellant*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: November 19, 2015
Filed: December 28, 2015

_____

BEFORE FEDERMAN, Chief Judge, SALADINO and SHODEEN, Bankruptcy
Judges

FEDERMAN, Chief Judge

Debtor Norma J. Cecil appeals from the Order of the Bankruptcy Court[1] denying her discharge pursuant to 11 U.S.C. § 727(a)(4)(A) for failure to list a number of assets and prepetition transfers in her bankruptcy schedules. For the reasons that follow, we AFFIRM.

## FACTUAL BACKGROUND

The essential facts are undisputed. Debtor Norma J. Cecil is 69 years old. She is a high school graduate who took some college courses. In 2012, after her adult daughter became ill, the Debtor took over operation of a convenience store which had been owned by that daughter since 2007. At the time the Debtor took over the store, her daughter owed some $120,000 to Plaintiff Home Service Oil Company. The daughter passed away in 2013. The Debtor closed the convenience store about two or three months before her bankruptcy filing in October 2014. For reasons not of record, the Debtor became obligated to Home Services Oil.

Prior to the bankruptcy filing, the Debtor and her husband also operated another business known as Larry Cecil Auto Sales, which consisted primarily of buying, rebuilding, and selling salvage automobiles. The Debtor's husband performed all of the work restoring the vehicles, while the Debtor did the title work, and bookkeeping, and paid the bills from the business checking account. Although the Debtor referred to the business at trial as her husband's business, she has also acknowledged that she had an ownership interest in it.

The Debtor also worked part time doing bookkeeping at Dixie Auto Auctions, a business owned by someone other than the Debtor or her family. She earned about

---

[1] The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

$80 per week from that part-time employment. Also, the Debtor and her husband were both receiving social security benefits.

In addition to her paid bookkeeping and office management positions, the Debtor served as a bookkeeper for several civic organizations, and she personally completed and filed her own income taxes.

The Debtor, through counsel, filed this Chapter 7 bankruptcy case on October 22, 2014. Her husband, who had been diagnosed with terminal cancer in 2013, did not join in the bankruptcy filing. The Debtor's husband passed away postpetition, on April 24, 2015. The Debtor listed Plaintiff Home Service Oil Co. as an unsecured creditor on Schedule F, with a scheduled debt of $32,359.31.

Although the Debtor asserts it was unintentional and of no consequence, the Debtor concedes that her initial schedules, which were filed with the petition, contained a number of omissions. Among the most significant omissions, and as discussed more fully below, on Schedule B, the Debtor checked "none" for the category of "[c]hecking, savings or other financial accounts," despite the fact that she legally owned or had signatory power on as many as twelve bank accounts on the date of filing. She also failed to disclose jewelry and firearms which she owned at the time of filing; her interest in Larry Cecil Auto Sales or its assets, including a 2008 Ford Escape which she was driving at the time of filing; and a security interest in a motor vehicle owned by her grandson.

With regard to income, although the Debtor listed the $675 per month she received from her own social security benefits on Schedule I, she failed to list her income from Larry Cecil Auto Sales or from her part-time bookkeeping work for Dixie Auto Auctions. In addition, at the time of filing, the Debtor's husband was also receiving social security benefits and other income from their business, but the Debtor disclosed no income for her husband on Schedule I or Form B22A, despite

3

the fact that Form B22A expressly directed the Debtor to complete income information for both herself and her nonfiling spouse.

On her Statement of Financial Affairs, the Debtor listed no income on Questions 1 and 2, which require debtors to state all income from all sources within two years prior to filing. Question Number 11 required the Debtor to list financial accounts closed within one year immediately preceding the commencement of the case. The Debtor checked the "none" box, despite the fact that there were as many as six such accounts. On Question Number 3, relating to payments over $600 made to creditors within 90 days prior to the bankruptcy, she again checked the "none" box, despite the fact that she and her husband had taken $23,000 in cash from a home safe and used it to pay off their home mortgage within 90 days prepetition. She also failed to disclose the transfer of a GMC Hummer H-2 to her daughter's boyfriend within two years prior to filing the case, in response to Question Number 10. Finally, even though she now says she held many of the omitted bank accounts for other people, discussed below, she answered "none" to Question Number 14, requiring her to list all property owned by another person that she owns or controls.

Although the Debtor did disclose many of the omitted items upon questioning at the meeting of creditors, and her attorney says he erroneously believed he had filed amended Schedules A, B, and C shortly after the meeting of creditors – which the Bankruptcy Court found to be credible – those amended schedules were not actually filed until the day before trial in the adversary proceeding. And, no amendment to the Statement of Financial Affairs or Form B22A was ever filed.

Based on the omissions, creditor Home Service Oil Company filed an adversary action seeking a denial of the Debtor's discharge pursuant to §§ 727(a)(2) and (a)(4). Following a trial, the Bankruptcy Court found that the Debtor's omissions on her schedules, viewed together, amounted to a reckless indifference to

4

the truth, sufficient to find fraudulent intent under § 727(a)(4), and denied the Debtor's discharge for making a false oath or account in connection with the case. The Debtor appeals.

## STANDARD OF REVIEW

We review findings of fact for clear error and conclusions of law *de novo*.[2] "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."[3] "The bankruptcy court's determination that the Debtor knowingly and fraudulently made a false oath or account under 11 U.S.C. § 727(a)(4)(A) is a factual determination which is reviewed for clear error on appeal."[4]

## DISCUSSION

Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall grant a debtor a discharge, unless "the debtor knowingly and fraudulently, or in connection with the case . . . . made a false oath or account. . . ." To establish that

---

[2] *Korte v. Internal Rev. Serv.* (*In re Korte*), 262 B.R. 464, 469 (B.A.P. 8th Cir. 2001) (citations omitted).

[3] *Ellsworth v. Bauder* (*In re Bauder*), 333 B.R. 828, (B.A.P. 8th Cir. 2005); *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (8th Cir. 1988) ("To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.").

[4] *Id*. at 820 (citing *In re Korte*, 262 B.R. at 470; *Cepelak v. Sears* (*In re Sears*), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000)).

the Debtor made a false oath under § 727(a)(4)(A), Home Service Oil is required to prove, by a preponderance of the evidence, that: (1) the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Debtor's bankruptcy case.[5] Denial of a discharge is a harsh remedy and § 727 is to be strictly construed in favor of the debtor.[6] "Importantly, however, § 727 was also included to prevent the debtor's abuse of the Bankruptcy Code."[7] Statements made with reckless indifference to the truth are regarded as intentionally false, and fraudulent intent may be established by circumstantial evidence.[8]

The Debtor does not dispute the existence of any of the elements under § 727(a)(4)(A) except for fraudulent intent.

On the issue of intent, the Debtor asserts several reasons, other than fraud, for not listing the various items. Specifically, as to the omitted bank accounts, seven of the accounts were titled in the Debtor's name for the benefit of someone else. For example, an account at First National Bank was entitled "SEMO Memorial Pageants,

---

[5] *Kaler v. Charles* (*In re Charles*), 474 B.R. 680, 684 (B.A.P. 8th Cir. 2012) (citation omitted).

[6] *Id*. at 683 (citation omitted).

[7] *Id*. (citation omitted).

[8] *In re Bren*, 122 Fed. Appx. 285, 286 (8th Cir. 2005) ("Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false.") (citation omitted); *Stamat v. Neary*, 635 F.3d 974, 982 (7th Cir. 2011) ("[A] showing of reckless disregard for the truth is sufficient to prove fraudulent intent" under § 727(a)(4)); *In re Charles*, 474 B.R. at 684; *In re Bauder*, 333 B.R. at 830.

6

Norma J Cecil, POD Account." It had a balance of $133.23 on the date of filing.[9] Another account at First National Bank was entitled "Norma J Cecil, Pamela G Wake, FBO Tyler Frye."[10] It had a balance of about $446 when the case was filed. These accounts, the Debtor explained at trial, contained money she and two other ladies collected from beauty pageants for scholarships to help fund certain beneficiaries' higher education.

An account at 1st Community Bank, titled in the name of "American Legion Auxiliary," but on which the Debtor had signatory powers, had a balance of over $19,000 as of January 3, 2015, which was a couple of months after the bankruptcy filing.[11] Similarly, an account titled "American Legion Auxiliary Poppy Fund," on which the Debtor had signatory rights, had a balance of nearly $5,000.[12] She testified that these were American Legion accounts and that the funds were used only for veterans. Another account was owned by "Grace Lutheran Church," on which the Debtor had signatory rights, and it had about $1,700 in it.[13] The Debtor testified she was the treasurer of the church, and the money in the account belonged to the church.

One account was entitled "Larry Cecil [and] Norma Cecil" with a balance of about $1,245 on the date of filing.[14] The Debtor did not believe this account needed

---

[9] Plaintiff's Exhibit 9.

[10] Plaintiff's Exhibit 10.

[11] Plaintiff's Exhibit 13.

[12] Plaintiff's Exhibit 14.

[13] Plaintiff's Exhibit 15.

[14] Plaintiff's Exhibit 11.

to be disclosed because only her husband's social security checks were deposited into this account, and her name was on the account for "convenience only."[15] Further, she asserts, the bankruptcy trustee could not reach it because the only money deposited was her husband's social security, or, if she did have an interest in those funds, they were owned by the her and her husband as tenants by the entirety ("TBE").[16]

There were also several undisclosed business-related accounts in the Debtor's name as well. An account at First State Community Bank, entitled "Norma Jean Cecil DBA Larry Cecil Auto Sales [and] Larry Cecil" had a balance of about $2,800 on the date of filing.[17] Although the Debtor acknowledged she was an owner of the account, she testified that this was her husband's business account, and that she wrote checks for him. There were also several accounts titled in the Debtor's name doing-business-as Northside, the daughter's convenience store, and for a U-Haul business, which had small balances or had been closed within a couple months prior to the bankruptcy filing.[18] Again, the Debtor contends that she did not believe the money in those accounts belonged to her, and therefore did not need to disclose it.

In sum, the Debtor asserts that, despite the fact that she knew her name was on the accounts, she believed she did not need to disclose them on her schedules because: (a) she believed the funds in the accounts "were not her money,"[19] (b) the

---

[15] *Brief of Appellant* at 13.

[16] *Id.*

[17] Plaintiff's Exhibit 12.

[18] *See* Plaintiff's Exhibits 17, 18, 20, 21, and 22.

[19] *See Brief of Appellant* at 12.

8

accounts had been closed or contained little money in them at the time of filing; and/or (c) the accounts which also had her husband's name on them were tenancy by entirety property. However, despite this belief, she also answered "none" to Question Number 14 on the Statement of Financial Affairs, which required her to list all property in her control but owned by other people.

She offers a similar reason for failing to disclose the transfer of the Hummer to her daughter's boyfriend, namely, that she never "owned" that vehicle, despite the fact that her name was apparently on the title. Rather, she asserts that the Hummer belonged to her daughter, who paid for it, and the Debtor transferred it to the boyfriend at her daughters' request at her death.

Finally, with regard to the $23,000 cash payment on her mortgage within 90 days prepetition, while the Debtor now acknowledges that this should have been disclosed, she asserts her discharge should not be denied because she merely converted TBE cash into TBE equity in her home. Further, she asserts, if she had wanted to hide that transaction, she could have waited a few days to file the bankruptcy case, and then she would not have had to disclose it in her Statement of Financial Affairs.[20]

The Bankruptcy Court found that failure to disclose the $23,000 cash payment, the Debtor's interest in Larry Cecil Auto Sales and the Northside convenience store, and the numerous business accounts, amounted to reckless indifference to the truth.

The Debtor admits she filled out her bankruptcy schedules "without doing a thorough investigation and ended up doing a poor job."[21] She asserts that this kind

---

[20] *Brief of Appellant* at 20-21.

[21] *Reply Brief of Appellant* at 4.

of "poor job" is not sufficient to deny her discharge under § 727(a)(4)(A); rather, she characterizes the issue under § 727(a)(4)(A) as "whether she did a poor job of filling out those papers for the *specific purpose* of defrauding her creditors."[22] Since her creditors would not have received anything regardless of whether she had disclosed all of the items, she asserts, she could not have had the specific intent to defraud them by failing to disclose them. Further, the Debtor refers to the omissions, except for the $23,000 cash payment on her mortgage, as "red herrings"[23] because those items "were not part of the bankruptcy estate."[24]

The Debtor misstates the meaning and purpose of § 727(a)(4).

> As § 727(a)(4)(A) makes clear, the [Bankruptcy] Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind. The debtor's petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts.[25]

---

[22] *Id.* (emphasis in original).

[23] *Brief of Appellant* at 20.

[24] *Brief of Appellant* at 14 ("Even in the Amendments [to the schedules], because of the Complaint, Debtor made the disclosures of these assets despite the fact that they appropriately were not part of the bankruptcy estate.").

[25] *In re Korte*, 262 B.R. at 474 (citations and internal quotation marks omitted). *See also In re Bauder*, 333 B.R. at 474 (Schermer, J., dissenting) ("The debtor's duty is to disclose *all assets*, not merely assets that the debtor believes have value. . . .Trustees and creditors should not be required to dig out and conduct independent examinations to get the facts.") (emphasis in original); *Nat'l Am. Ins. Co. v. Guajardo* (*In re Guajardo*), 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997) (cited by *In re Korte*, 262 B.R. at 474) ("The Bankruptcy Code requires disclosure of all interests in property, the location of assets, prior and ongoing business and personal transactions and, foremost, honesty. The failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the

Full disclosure is required, not only to ensure that creditors receive everything they are entitled to receive under the Bankruptcy Code, but also to give the bankruptcy system credibility and make it function properly and smoothly:

> Bankruptcy provides debtors with a great benefit: the discharge of debts. The price a debtor must pay for that benefit is honesty and candor. If a debtor does not provide an honest and accurate accounting of assets to the court and creditors, the debtor should not receive a discharge.[26]

Moreover, questions of whether bank accounts and other assets titled in a debtor's name are, or are not, property of the estate are not questions a debtor should decide.[27] Rather, those questions are plainly and fundamentally issues to be determined by a trustee or the court.

In *Bauder*, we held that a debtor who failed initially to list a ring which, based on her uncontroverted testimony, had a value of just a few dollars, should receive her discharge. We held that the omission of property of trivial value is not a material omission particularly where, as in *Bauder*, the debtor amended her schedules nine days after the § 341 meeting of creditors.

---

application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole.").

[26] *In re Bauder*, 333 B.R. at 834 (Schermer, J. dissenting).

[27] *Zitwer v. Kelly* (*In re Kelly*), 135 B.R. 459, 462 (Bankr. S.D. N.Y. 1992) ("Determining whether disclosure is material is not for the debtor to decide. Nor is it a defense that the property was worthless, which, of course, here it was not. Successful administration of the bankruptcy laws depends on the debtor's full disclosure.").

The Debtor argues that, as in *Bauder*, she believed she did not need to disclose these items because the trustee would not have been able to liquidate them for her creditors. Perhaps that would have been so upon examination by the trustee. However, for example, her contention that the $23,000 in cash in her safe was owned with her husband, and therefore out of the trustee's reach, was an argument she could have made if the trustee had made a claim to those funds. But the trustee was entitled to ask her and her husband about the source of that cash to determine whether it in fact was TBE property. And, even if it were TBE property, that asset could have been made available to pay any of her debts on which her husband was a co-debtor. That is just one example of how the bankruptcy system depends on complete disclosure, and why debtors are not free to pick and choose what to disclose, and what not to disclose. Since the bankruptcy system depends on full disclosure, a discharge is properly denied where a debtor acts with reckless indifference in failing to list assets in which that debtor holds an interest. Here, whether these assets would have ultimately resulted in funds for creditors or not, the items the Debtor omitted from her schedules were not of trivial value.[28]

Unlike *Bauder*, the Debtor did not negligently omit an item of trivial value. A trustee looking at the pleadings she filed to initiate the case would reasonably have concluded that she was a typical debtor living on social security alone, with no cash, no checking account, and no interest in any business.

Contrary to the Debtor's characterization, it is clear from the evidence that she was not merely "sloppy" or "careless" in filling out her schedules. For example, she admitted at trial that she knew about the existence and her signatory powers on the bank accounts but, in effect, determined she did not need to list them because she believed her creditors could not reach them. Even though the Bankruptcy Court

---

[28] *Compare, Bauder*, 333 B.R. 828.

12

indicated that it might have agreed with the Debtor that at least the charitable bank accounts were not estate property (by imposing a constructive trust or other equitable remedy), it was the Court's job to make such a determination, not the Debtor's. And the same is true with respect to the business she owned with her husband failed to disclose.

The Bankruptcy Code requires a debtor to provide the Court, the trustee, and the creditors with a complete picture of her assets and liabilities. The Debtor, a bookkeeper for several businesses and nonprofits, failed to truthfully answer specific questions necessary to complete that picture. As a result, the Bankruptcy Court found that she acted with reckless indifference in failing to disclose assets of significant, not trivial, value. Those assets should have been disclosed in response to specific questions asked of all debtors. The Court's findings as to her intent were not clearly erroneous.

## CONCLUSION

Because the Bankruptcy Court did not clearly err in finding that the Debtor's omissions were made with reckless indifference to the truth, and were therefore intentionally false and fraudulent, the denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A) is AFFIRMED.

_____